CHURCH OF SCIENTOLOGY OF
CALIFORNIA, Appellant,

v.

Patricia R. HARRIS, et al.

No. 80–1189.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 5, 1980.
Decided April 17, 1981.

Robert A. Seefried, Washington, D. C., with whom Earl C. Dudley, Jr., Washington, D. C., was on the brief, for appellant.

Keith A. O'Donnell, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and John R. Fisher, Asst. U. S. Attys., Washington, D. C., were on the brief for appellees.

Before ROBINSON, MacKINNON and WALD, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

The Church of Scientology of California ("Scientology") appeals from an opinion and order of the district court which denied its request for an award of attorney's fees and litigation costs under section 552(a)(4)(E) of the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552(a)(4)(E). The district court concluded that Scientology was not *eligible* for such an award because it had not "substantially prevailed" within the meaning of that section. We find that Scientology did substantially prevail and direct the district court on remand to determine whether Scientology is *entitled* to the fees and costs it seeks.

## I.

By letters dated December 3 and December 19, 1974, Scientology made a formal request under FOIA for all records in the possession of the Department of Health, Education, and Welfare ("HEW") relating to the Church of Scientology or its founder, L. Ron Hubbard. HEW responded on December 30, 1974 that "[n]o materials pertinent to your request could be located in the Department's Central Files Section." Scientology subsequently submitted a supplemental request on November 5, 1975, which provided additional names under which relevant files might be located, and which noted that "[t]here exists within the organizational structure of DHEW several major offices and components thereof, apparently now encompassed by the records examination undertaken by your Department in compliance with my earlier request(s)." HEW replied on December 2, 1975 that "[c]opies of your request were circulated to components of the Department except for the Food and Drug Administration and the Alcohol, Drug Abuse, and Mental Health Administration as requested in your letter." HEW stated that three card references to Scientology had been found in the files of the Office of Investigations and Security, but asserted that these references were exempt from disclosure. HEW also

explicitly declared that "[n]o other component of the Department was able to locate any records pertaining to the Church of Scientology or any of the organizations listed in your request."

Scientology filed an administrative appeal. In its final agency action, by a letter dated February 17, 1976, HEW reversed in part the initial denial of the three card references, and disclosed portions thereof. HEW also explained that these cards referred to documents which originated in other agencies—the FBI, the Civil Service Commission, and the FDA—and stated that the request for these documents had been transmitted to the originating agencies.[1]

Dissatisfied with this result, Scientology filed a complaint under FOIA in the district court on June 9, 1976 seeking *de novo* review of HEW's actions. On August 4, 1976, Scientology served HEW with its first set of interrogatories. In its answers to interrogatories, HEW revealed for the first time that an unspecified number of additional documents encompassed by Scientology's request existed in the files of HEW's Office of General Counsel. These documents were said to concern "litigation and other relationships between HEW and the Church of Scientology or its affiliates", and to be exempt from disclosure under 5 U.S.C. § 552(b)(5).[2] The only explanation given for withholding the documents was that

> Ms. Sisk [an attorney in the OGC] knew that all records in the division's files were either documents of which Joel Kreiner [a Scientology attorney] had copies . . . documents subject to the attorney-client privilege and exempt from disclosure under the Freedom of Information Act . . .

1. On August 11, 1976, HEW released portions of the FDA and Civil Service Commission documents. HEW also advised Scientology that the Office of the Assistant Secretary of Health ("OASH") had documents relating to Scientology's separate FOIA request to the FDA. Some of these documents were claimed to be exempt from disclosure, Joint Appendix ("App.") at 83–86. HEW later informed Scientology that the OASH files contained only one document, which concerned Scientology's FOIA request to the Public Health Service, and not the FDA.

This document was also claimed to be exempt from disclosure. App. at 88–89. HEW apparently released this document, however, at the Sisk deposition. *See* Brief for Appellants at 10 n.3, 12 n.4.

2. HEW also claimed that the Office of General Counsel's documents were exempt under 5 U.S.C. § 552(b)(5) in its response to Plaintiff's Supplementary Set of Interrogatories. App. at 89.

or duplicates of documents from the files of the Food and Drug Administration.

In an effort to obtain further information, Scientology noticed and took the deposition of Ms. Joanne Sisk, who was the individual identified in HEW's answers to interrogatories as having searched the Office of General Counsel's files in response to Scientology's FOIA request. At the deposition, Ms. Sisk confessed that she had not conducted an actual search of the Office of General Counsel's files until around the time that her deposition had been noticed, and that HEW's administrative response to Scientology's FOIA request and HEW's answers to interrogatories had not been based upon an actual search of the files but upon an assumption as to their contents.[3] An internal HEW memorandum also disclosed that Ms. Sisk had been aware that the Office of General Counsel's files contained documents responsive to Scientology's FOIA requests at the time the requests were being processed administratively.[4]

The belated search of the files of the Office of General Counsel produced approximately 230 responsive documents.[5] Ms. Sisk's deposition resulted in the release of 116 documents to Scientology, all but eight of which were copies of envelopes, transmittal memos, or telephone message slips. It

also resulted in the preparation of a *Vaughn* index [6] for the remaining documents which were claimed to be exempt from disclosure. On February 25, 1977, Scientology renounced its claims to 44 of the withheld documents. In June, 1977, HEW released 31 of the withheld documents following a letter by Attorney General Bell to the heads of all federal agencies informing them of new policies concerning FOIA.[7] Thus, at the time the district court ruled on the parties' cross-motions for summary judgment on February 28, 1978, 47 documents remained in dispute. The district court granted HEW's motion for summary judgment as to 45 of the documents, ordered partial disclosure of 2 documents, and directed HEW to provide additional information on three other documents.

On April 25, 1979, Scientology petitioned the district court for an award of attorney fees and litigation costs pursuant to section 552(a)(4)(E) of FOIA. The district court denied the motion on December 19, 1979. After reviewing the history of the litigation, the district court stated:

In summary, the Church obtained release of 150 documents in litigation, but of this number, 108 documents were copies of envelopes, transmittal slips and the like, and 31 others were released as a

3. *See* App. at 111–113. ("I did that on the basis of 18 years' experience with my office, on the basis of what goes into our files, plus my involvement at that time with the Food and Drug Administration responding to the massive requests which have been made to the Food and Drug Administration for its documents by Scientology under the Freedom of Information Act.")

4. This awareness is evidenced by a letter in the record from Mr. Richard Merrill of the Office of General Counsel to Ms. Mary Goggin, a person identified by HEW in its answers to interrogatories as the individual who supervised the search of the files of the Office of General Counsel. This memorandum, dated November 18, 1975, states:

This is to confirm the telephone conversation between yourself and Ms. Sisk of this office in which she informed you that, in so far as we can tell, all the records which this office might have concerning Scientology are duplicates of records from the files of the Food and Drug Administration. The only exception would be the various briefs filed in the

various courts which have considered any case involving Scientology, and those Kreiner already has.
App. at 8.

5. *See* Brief for Appellants at 9. The district court made no finding on this point. Since the government has not challenged the figure offered by Scientology, we accept it as accurate.

6. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

7. In this letter, the Attorney General stated that the government should not withhold documents unless it is important to the public interest to do so, even if there is some arguable legal basis for the withholding. He also declared that in order to implement this policy, the Justice Department will defend FOIA suits only when disclosure is demonstrably harmful, even if the documents technically fall within the exemptions in the Act. App. at 127.

result of Attorney General Bell's letter. The Church received just fourteen documents comprising 34 pages, excluding envelopes and transmittal slips, as a result of its FOIA suit.

\*    \*    \*    \*    \*    \*

In this case, plaintiff only obtained through the discovery process an insubstantial part of what was sought. While the Court does not accept the defendants' argument that the plaintiff must win a majority of what is at stake in order to substantially prevail for purposes of receiving attorney's fees, the Church was largely unsuccessful in its efforts to obtain release of the withheld material. The uncovering of documents, unaccompanied by any substantial release, either voluntarily or by court order, is insufficient to demonstrate in this case that the plaintiff has substantially prevailed within the meaning of 5 U.S.C. § 552(a)(4)(E).

The failure to search files completely on receiving the initial FOIA request and to disclose the existence of the documents once they were discovered is inexcusable. This failure required the Church to resort to two sets of interrogatories and a deposition. However, HEW's actions are mitigated here by the existence of considerable other FOIA litigation by the Church, which led the agency to assume reasonably that the documents were duplicates of those available to the Church in other suits. Once defendants located this material in the Office of General Counsel, through plaintiff's discovery efforts, some material was released and a *Vaughn* index was prepared for the rest. Under these circumstances, HEW's delay in disclosing the existence of the documents, while regrettable, does not of itself justify an award of attorney's fees.

The Court recognizes that the "fundamental purpose of Section 552(a)(4)(E) is to facilitate citizen access to the courts to vindicate their statutory rights," but for that purpose to have any meaning, the statutory prerequisite that the plaintiff substantially prevail in the case must first exist.

Since the plaintiff has not substantially prevailed, there is no need to reach the question whether an exercise of the Court's discretion to award reasonable attorney's fees and expenses is appropriate.[8]

Scientology appealed.

### II.

■ As the district court recognized, analysis of a section 552(a)(4)(E)[9] motion for fees and costs requires that two questions be asked and answered. 1) is the plaintiff "eligible" for such an award, and if so, 2) is it "entitled" to such an award? *See Crooker v. U. S. Department of the Treasury*, No. 80–1412 (D.C.Cir., October 23, 1980); *Fenster v. Brown*, 617 F.2d 740 (D.C. Cir.1979); *Cox v. United States Department of Justice*, 601 F.2d 1 (D.C.Cir.1979).

■ A FOIA plaintiff is eligible for a section 552(a)(4)(E) award if it has "substantially prevailed". Our cases have established that this is largely a question of causation—did the institution and prosecution of the litigation *cause* the agency to release the documents obtained during the pendency of the litigation? *See e. g., Cox, supra; Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704 (D.C.Cir. 1977). As we observed in *Cox*:

It is true that a court order compelling disclosure of information is not a condition precedent to an award of fees, *Foster v. Boorstin*, 182 U.S.App.D.C. 342, 344, 561 F.2d 340, 342 (1977); *Nationwide Building Maintenance, Inc. v. Sampson*, 182 U.S.App.D.C. 83, 87, 89, 559 F.2d 704, 708–10 (1977), but it is equally true that

---

8. *Church of Scientology of California v. Califano*, C.A. No. 76–1005, 3–5 (D.C.C. December 18, 1979), App. at 229–31 (citations and footnote omitted).

9. Section 552(a)(4)(E) provides:

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E).

an allegedly prevailing complainant must assert something more than *post hoc, ergo propter hoc, Vermont Low Income Advocacy Council Inc. v. Usery,* 546 F.2d 509, 514 (2d Cir. 1976). Instead, the party seeking such fees in the absence of a court order must show that prosecution of the action could reasonably be regarded as necessary to obtain the information. *Vermont Low Income Advocacy Council, Inc. v. Usery, supra* at 513, and that a causal nexus exists between that action and the agency's surrender of the information, *Cuneo v. Rumsfeld, supra* 180 U.S.App.D.C. [184] at 190, 553 F.2d [1360] at 1366. Whether a party has made such a showing in a particular case is a factual determination that is within the province of the district court to resolve. In making this determination, it is appropriate for the district court to consider, *inter alia* whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed. We have elsewhere had occasion to note both the plethora of Freedom of Information Act cases pending before federal agencies at any given time, and the time-consuming nature of the search and decision process. *See Open America v. Watergate Special Prosecution Force,* 178 U.S.App.D.C. 308, 315, 547 F.2d 605, 612 (1976). If rather than the threat of an adverse court order either a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit.

*Cox, supra,* 601 F.2d at 6 (footnote omitted).

▪ The history of the instant litigation makes clear that Scientology substantially prevailed, for it shows not only that the institution and prosecution of this case was "necessary" to obtain the 150 documents ultimately released by HEW but also that a powerful "causal nexus" exists between the litigation and HEW's surrender of these documents. Throughout the administrative processing of Scientology's FOIA request, HEW maintained that only three card references and three documents fell within the scope of the request. After Scientology filed suit and began discovery, HEW disclosed that over 200 responsive documents existed in the files of the General Counsel, and during the course of the litigation released approximately two-thirds of those documents. There is absolutely no indication in the record that HEW would have actually searched the General Counsel's files or released any of the contents thereof in the absence of this litigation. This is clearly not a case where the agency, "upon actual and reasonable notice, made a good faith effort to search out material and to pass on whether it should be disclosed." *Cox, supra,* 601 F.2d at 6. On the contrary, it is a case in which the agency, upon actual and reasonable notice, decided to act upon an assumption as to the nature of certain material and was then obliged to release most of that material when the light of litigation exposed the error of its assumption. That, in our opinion, is the critical point—*but for the institution and prosecution of this suit, the documents ultimately obtained by Scientology would never have been identified and therefore would never have been released.* Under these circumstances, it is clear that the suit was necessary and causally linked to the release of the documents obtained.

The district court nevertheless found that Scientology had not substantially prevailed because it "only obtained through the discovery process an insubstantial part of what was sought" and "was largely unsuccessful in its efforts to obtain release of the withheld material". The basis for these comments appears to be the district court's conclusion that Scientology received "just fourteen documents" as a result of its suit. The premises underlying this conclusion in turn appear to be twofold: 1) the court's ruling that the 31 documents released in June, 1978 should be excluded from the tally of documents obtained, and 2) the court's subjective belief that the 108 envelopes and transmittal slips were too insig-

nificant to be included in that tally. We think both of these premises are erroneous.

The district court discounted the 31 documents released in June 1978 because it found that they "were released as a result of Attorney General Bell's letter" and not as a result of the litigation. We accept this finding, to the extent that it acknowledges that the Attorney General's letter in the last analysis precipitated release of the documents and was a cause of their release. The initiation and prosecution of this litigation, however, was in our opinion the direct cause of their disclosure, for absent this litigation, following the unsuccessful administrative request, the General Counsel's files would never have been searched, the 31 documents would never have been identified as falling within the scope of Scientology's FOIA request, and the documents would never have been evaluated to determine whether they should or could be released under the guidelines set forth in the Attorney General's letter. The timing of the Attorney General's letter does not eliminate the fact that if the litigation had never been brought the documents would never have been disclosed. It was the litigation that *produced* the 31 documents, not the letter.

The government argues that release of these 31 documents should be discounted because to hold otherwise would "punish" HEW for making disclosures more liberal than commanded by FOIA. We disagree. To the extent that HEW is "punished", it is not because the agency released documents whose disclosure FOIA did not require, but because the agency failed to comply with its basic duty to search its files in response to a proper request. Indeed, we think we might be punishing Scientology if we discounted documents whose disclosure, in a very important and fundamental sense, was brought about only as a result of its lawsuit, and only after this lawsuit forced HEW to comply with the requirements of the Act. *Cf. Halperin v. Department of State*, 565 F.2d 699, 706 n.11 (D.C.Cir.1977) (Plaintiff substantially prevails when its litigation benefits the nation by making an agency aware of the duties imposed upon it by FOIA) (dicta).

We also think that there is no reason in law or logic to discount the significance of the 108 envelopes and transmittal slips in determining whether Scientology substantially prevailed. FOIA mandates that an agency disclose all identifiable agency "records" in response to a proper FOIA request unless the documents fall within one of the Act's specific exemptions, *See* 5 U.S.C. §§ 552(a)(3), (B); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 137, 95 S.Ct. 1504, 1510, 44 L.Ed.2d 29 (1975). It is not contended that the envelopes and buck slips are not "records" within the meaning of the Act, nor that they are exempt or even arguably exempt from disclosure. Since disclosure of the envelopes and buck slips was required by FOIA, nothing in the Act in general, nor in section 552(a)(4)(E) in particular, suggests that their disclosure should be ignored or discounted in evaluating the relative success of appellant in this litigation.

Indeed, there is case law that points in the opposite direction. In *Founding Church of Scientology of Washington, D. C., Inc. v. Marshall*, 439 F.Supp. 1267 (D.D.C.1977), the Labor Department released several hundred pages of material pursuant to the plaintiff's administrative appeal. The Department withheld certain documents in their entirety and made deletions in others. The withheld documents consisted of a routing slip, a secretarial referral card, and a note to file. The deletions were of notations and signatures identifying the author of the letter or memorandum, the typist, the person who signed off on the document, and those who were to receive carbon copies of it. *Id.* at 1268. After the plaintiff filed suit and served a set of interrogatories, the Department released the withheld material, and the plaintiff moved for an award of attorney's fees and litigation costs. Although the nature of the material withheld by the Labor Department could have been characterized as unimportant or insignificant, the court made absolutely no mention of this point and simply granted the motion be-

cause it found that the suit had caused the release of the material. *Id.* at 1269–70.[10]

In sum, both the 31 documents released in June, 1978 and the 108 envelopes and transmittal slips must be recognized by the district court as having been released as a result of the litigation in determining whether Scientology substantially prevailed. When such circumstances are considered, we find that the litigation caused the release of 150 documents, approximately two thirds of the documents at issue. Given these facts, there can be no doubt that Scientology prevailed in its suit, and prevailed to a substantial degree. Scientology is thus eligible to apply for an award of attorney's fees and litigation costs under section 552(a)(4)(E).

### III.

■ A plaintiff, however, is not automatically "entitled" to an award under section 552(a)(4)(E) merely because it is eligible for such an award. *See e. g., Fenster v. Brown,* 617 F.2d 740 (D.C.Cir.1979) (District court's denial of attorney's fees and costs to eligible plaintiff affirmed). Rather, the decision as to whether to award fees and costs to an eligible party rests in the sound discretion of the district court, *Cox, supra,* 601 F.2d at 7. Our decisions have touched upon some of the factors the district courts should consider in exercising their discretion, and these include (1) the benefit to the public if any, derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis of law. *Fenster, supra,* 617 F.2d at 742; *see Cox, supra,* 601 F.2d at 7. We have also reminded the district courts that, in determining whether an eligible plaintiff is entitled to an award, they must

> always keep in mind the basic policy of the FOIA to encourage the maximum feasible public access to government in-

formation and the fundamental purpose of section 552(a)(4)(E) to facilitate citizen access to the courts to vindicate their statutory rights. Each of the particular factors . . . must be evaluated in light of these fundamental legislative policies. *The touchstone of a court's discretionary decision under section 552(a)(4)(E) must be whether an award of attorney's fees is necessary to implement the FOIA.*

*Nationwide Building Maintenance, Inc., supra,* 559 F.2d at 715 (emphasis added).

Because the district court in this case determined that Scientology had not substantially prevailed and thus was not eligible for an award of fees and costs under section 552(a)(4)(E), it did not reach the question whether Scientology was *entitled* to such an award. Scientology nevertheless requests that we direct the district court to award it fees and costs, on the grounds that the district court's refusal to do so on remand would constitute a gross abuse of discretion in light of HEW's "recalcitrant and obdurate conduct, both at the administrative level and during the course of this litigation".

We agree that the propriety of the government's conduct is an important factor to be considered in determining Scientology's entitlement to the award it seeks. We also believe, however, that we are not presently in a position to pass on what would or would not constitute an abuse of discretion given the facts of this case. The propriety of the government's conduct is but one variable in the section 552(a)(4)(E) equation, and a section 552(a)(4)(E) award must be based upon a reasoned consideration of "all relevant factors". *Nationwide Building Maintenance, Inc., supra,* 559 F.2d at 705; *see also id.* at 714 (district court must consider all factors, and must be careful not to give any particular factor dispositive weight). The record before us is simply insufficient for us to evaluate all the relevant factors, especially since it does not reveal the nature, content or significance of

---

**10.** The court properly reduced the amount of the fees requested, however, to deny compensation for preparation of a second set of interrogatories which played no part in causing release of the withheld material. *Id.* at 1270, 1271.

the documents released to Scientology. More importantly, however,

> in this area where, as we have continually emphasized, Congress has relied on the broad discretion of the courts, it is better to have that discretion exercised by the court which has been the most intimately associated with the case.

*Id.* at 716. *Accord, Crooker, supra*, slip op. at 5; *Cox, supra*, 601 F.2d at 6–7; *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1368 (D.C.Cir. 1977). Accordingly, we remand the case to the district court for consideration of whether Scientology is entitled to an award under section 552(a)(4)(E) and if so to determine the amount thereof.[11]

*Reversed and remanded.*

---

**11.** We note the court's assertion is factually inaccurate that HEW promptly released some material and prepared a Vaughn index for the rest once the Office of General Counsel's documents had been located through plaintiff's discovery efforts. HEW knew at least as of November 18, 1975 that its Office of General Counsel's files contained documents responsive to Scientology's FOIA request. *See* n.4 *supra*. Despite this knowledge, HEW did not search the files, and did not even disclose that it was operating under the assumption that Scientology already possessed those documents which were not exempt from disclosure. Rather, it affirmatively represented that "no other component of the Department [including the Office of General Counsel] was able to locate any records pertaining to the Church of Scientology or any of the other organizations listed in your request." Only after Scientology filed suit did HEW even disclose the existence of the Office of General Counsel's documents, and then it claimed that the documents were exempt without even reviewing the documents in question. Only after Scientology noticed the deposition of Ms. Sisk did HEW actually search its files, and release many of the documents. The agency did not locate the documents through Scientology's discovery efforts; rather, Scientology's discovery efforts forced the agency to acknowledge the existence of documents of which HEW was already aware, and whose existence HEW had refused to reveal. This conduct hardly mitigates HEW's failure to conduct an actual search of its files in response to Scientology's initial FOIA request.