**Yvonne S. ARCHER, Plaintiff,**

v.

**Ross CIRRINCIONE, Otis R. Bowen, and Department of Health and Human Services, Defendants.**

**No. 88 Civ. 4015 (PKL).**

United States District Court, S.D. New York.

Oct. 18, 1989.

Brown & Seymour, New York City (Whitney North Seymour, Jr., and Craig A. Landy, of counsel), for plaintiff.

Benito Romano, U.S. Atty., S.D.N.Y., New York City (Craig A. Stewart, of counsel), for defendants.

## ORDER & OPINION

LEISURE, District Judge:

Plaintiff Yvonne Archer brings this action under the Freedom of Information Act ("FOIA") requesting documents related to the administration of Part B of the Medicare Program. Plaintiff also asks that the Court hold a hearing to determine if defendant Ross Cirrincione, an employee of defendant Department of Health and Human Services ("HHS"),[1] intentionally blocked and delayed legitimate FOIA requests. Defendants argue in response that the materials demanded by plaintiff are protected against disclosure by a specific statutory exception to the FOIA. Defendant Cirrincione claims that individual administrators are not permissible defendants in FOIA cases, and that in any case his refusal to release the requested documents was legally proper.

Both defendants moved for summary judgment under Fed.R.Civ.P. 56 on the issues of document disclosure and the hearing on defendant Cirrincione. Defendant Cirrincione moved to dismiss the claim against him for lack of subject matter jurisdiction, or, in the alternative, under Fed.R. Civ.P. 12(b)(6). Plaintiff opposed defendants' motions and filed a cross-motion for summary judgment.

## BACKGROUND

Plaintiff Yvonne Archer challenges the propriety of a decision by HHS to cut in half the payment limit for anesthesia during cataract surgery under Part B of the Medicare Program. Archer alleges that HHS failed in its statutory duty to consider public comments submitted in response to the proposed agency action. HHS answers that the documents requested consist primarily of early drafts of the final regulation which would not be available to an opposing party in a standard civil litigation. Thus they are accorded special protection against disclosure under 5 U.S.C. § 552(b)(5) ["Exemption (b)(5)"] of the FOIA. Before discussing in detail the facts and legal issues of this case, a brief overview of the relevant statutes is in order.

The Medicare Act of 1965, 42 U.S.C. § 1395, is divided into two sections, Part A and Part B. Part A establishes major medical insurance for hospital care and related post-hospitalization services. 42 U.S.C. §§ 1395c—1395i. Part B provides additional coverage for persons over 65 and the disabled. 42 U.S.C. §§ 1395j—1395w. Eligible individuals voluntarily enroll in Part B and pay periodic premiums into a federally subsidized fund. Under Part B, the Secretary of HHS is authorized to contract with private insurance companies to administer the claims process. 42 U.S.C. § 1395u. A person enrolled in Part B files a claim with his private carrier for reimbursement for medical expenses. If the carrier determines that the services were "medically necessary," the expenses "rea-

---

1. Ross Cirrincione is Chief of the Freedom of Information Branch of the Office of Public Af-
fairs of the Health Care Financing Administration within HHS.

sonable," and the claims otherwise payable out of Part B, it then satisfies the claimant out of the federally subsidized fund. 42 U.S.C. § 1395u(b)(3).

The Department of Health and Human Services limits coverage for services provided if it determines that the expenses incurred are not reasonable. Section 1395u(b)(8)(C) states in part that "[i]n determining whether to adjust payment rates . . . , the Secretary shall consider the potential impacts on quality, access, and beneficiary liability of the adjustment. . . ." For HHS to change what it considers to be a reasonable charge for a particular service, the agency must follow a special notice-and-comment procedure built into the Medicare Act. First, the Secretary of HHS must see to "appropriate consultation with representatives of the physicians likely to be affected by any change. . . ." 42 U.S.C. § 1395u(b)(9)(A). Then the Secretary must publish notice of the proposed limit adjustment in the Federal Register. *Id.* This notice must contain the "factors and data" relied on in setting the new limit and its "potential impacts." *Id.* at 1395u(b)(9)(B). The public is then given an opportunity to submit comments on the suggested change, *id.* at 1395u(b)(9)(C), and the Secretary must "tak[e] into consideration" these comments in making his final determination. *Id.* at 1395u(b)(9)(E)(i). The final decision of the Secretary is also published in the Federal Register and must include the factors relied on and responses to the public comments. *Id.* at 1395u(b)(9)(E)(ii).

In August, 1986, HHS announced in the Federal Register its intention to cut in half the coverage limit for anesthesia during cataract operations. 51 Fed.Reg. 28710 (August 11, 1986); 51 Fed.Reg. 29316 (August 15, 1986). In response to this initial notice, HHS received approximately 300 written comments from the public, most of which opposed the suggested adjustment. The Secretary decided not to change his opinion on the issue, and on October 7, 1986, HHS published its final rule. 51 Fed. Reg. 35693 (October 7, 1986).

In its notice accompanying the final rule, HHS responded to some of the more fre-

quently voiced objections. The public comments addressed such concerns as a potential drop-off in the participation rate of anesthesiologists and the effects of the proposal on the quality of care. Alternate options were put forward, such as reducing the coverage limit by a lesser amount, phasing the new limit in over a period of three years, and retaining the old higher limit for general anesthesia. The agency responded to each of these comments in turn. The answers reflect at least some consideration by HHS of the comments submitted by the public. Finally, the agency projected a fiscal savings of $405 million over five years and an average reduction of 2% in the gross incomes of anesthesiologists. 51 Fed.Reg. 35693, 35695–700 (October 7, 1986).

On June 7, 1988, plaintiff filed a FOIA request with HHS asking for copies of all the public comments received, and all "minutes, memoranda, notes and other documents" relating to the consideration by the agency of the public comments and any consultations with representatives of the physicians likely to be affected by the proposed changes. Complaint ¶ 15. In response to the initial request, HHS produced 685 pages of documents. The agency refused to release an additional 190 pages "because they were predecisional internal agency documents that reflected agency deliberations." Defendants' brief at 2. Plaintiff then filed this suit to compel production of the withheld documents. The gist of the complaint is that "no good faith consideration was given to the correspondence as required by law, and that [the HHS administrator who made the decision] had made up his mind in advance what he was going to do and simply swept these public comments under the carpet." Complaint ¶ 18. Plaintiff desires all the documents in order to consider "possible legal action to set aside the cataract cap." *Id.*

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrog-

atories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [i]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court then must determine whether there does indeed exist a genuine issue as to any material fact; "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc v. Unilever N.V.*, 867 F.2d 102 (2d Cir.1989).

This case is appropriate for summary judgment, because the only factual issue concerned the contents of the withheld documents. If the Court could discover the contents of the documents for itself, then it would be in a strong position to rule on the applicability of Exemption (b)(5). The briefs submitted to the Court demonstrated that some dispute over the contents of the documents existed. Thus, on September 19, 1989, the Court ordered an *in camera* review of the documents.

The decision to view the documents *in camera* was not mandated by law but was the most expeditious course of action given the small number of documents and continued dispute over their contents.[2] The Court examined the documents for two purposes: first, to see whether their contents conformed to the brief description given by defendants;[3] and second, to see whether any non-privileged factual material was contained in the documents which should be sifted out and disclosed.[4] Now assured that the documents are as described by defendants and that they contain no severable factual material, the Court can decide the principal issue of the case: whether the Medicare Act requires disclosure of the documents under the FOIA despite Exemption (b)(5).

### B. FOIA Exemption (b)(5)

■ The Freedom of Information Act was passed by Congress in 1966 to inform

---

**2.** The decision whether to conduct an *in camera* review in a FOIA case is in the discretion of the district court. 5 U.S.C. § 552(a)(4)(B). In the Second Circuit, *in camera* examinations have generally been considered the exception rather than the rule due to administrative burden. *Local 3, IBEW, AFL–CIO v. NLRB*, 845 F.2d 1177, 1180 (2d Cir.1988); *Donovan v. FBI*, 806 F.2d 55, 59 (2d Cir.1986); *Mead Data Cent., Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 250 n. 10 (D.C.Cir.1977). If the affidavits supporting a motion for summary judgment are sufficiently detailed to allow the district court to discern the contents of the withheld documents, then an *in camera* inspection is not necessary. *See Local 3, IBEW, AFL–CIO v. NLRB, supra*, 845 F.2d at 1180; *Donovan v. FBI, supra*, 806 F.2d at 59; *Founding Church of Scientology v. National Security Agency*, 610 F.2d 824, 830 (D.C.Cir.1979). A conclusory statement of the contents of the documents is not adequate. *Brinton v. U.S. Dept. of State*, 476 F.Supp. 535, 538 (D.D.C. 1979), *aff'd*, 636 F.2d 600, 606; *cf. Local 3, IBEW, AFL–CIO v. NLRB* 109 CCH LC ¶ 10,535, 1987 WL 18644 (S.D.N.Y.1987), *aff'd*, 845 F.2d 1177 (granting agency's summary judgment request without an *in camera* review based on sworn-to detailed description of withheld doc-

uments). Despite these legally viable alternatives, this Court conducted an *in camera* examination due to the small number of withheld documents.

**3.** The only sworn-to description of the withheld documents before the Court states that they are "predecisional and contain staff advice. Specifically, the records we withheld were predecisional, internal drafts of a regulation that contained suggested changes, marginal notes, and analyses of public comments, constituting opinions, conclusions, and advice on preparing the Final Rule." Declaration of Carl Coleman, Deputy Director of Freedom of Information/Privacy Act Division of the Office of the Assistant Secretary for Public Affairs, HHS, April 20, 1989, at ¶ 5.

**4.** Factual material relied upon by the agency decisionmaker is not protected under the FOIA exemptions. Unless such factual material is "inextricably intertwined" with the policy-making recommendations, it must be disclosed. *Lead Industries Association v. Occupational Safety and Health Administration*, 610 F.2d 70, 85 (2d Cir.1979). *See EPA v. Mink*, 410 U.S. 73, 89, 93, 93 S.Ct. 827, 837, 839, 35 L.Ed.2d 119 (1973).

the public as to government activity and thereby increase governmental accountability and responsibility. Subsequent amendments in 1974 and 1976 have strengthened the overriding pro-disclosure policy of the act. The FOIA allows "any person" to request identifiable agency records. 5 U.S.C. § 552(a)(3). Unless the records are protected by a specific statutory exemption, the agency must produce them. In addition, Congress has allowed for the collection of attorney fees and court costs by members of the public whose FOIA requests are contested unsuccessfully by the government. *Id.* at 552(a)(4)(A).

Perhaps the most broad of the statutory exemptions is found at 5 U.S.C. § 552(b)(5) which allows agencies to withhold any "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been interpreted to mean that an agency need not produce any material under the FOIA which would be non-discoverable in a standard civil proceeding between the agency and the individual. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 148–49, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975). Thus the agency may assert any statutory or common law privilege which would be available in a civil litigation to defeat a FOIA request. In harmonizing the FOIA's mandate of maximum disclosure with Exemption (b)(5), the Supreme Court has written, "[i]n keeping with the Act's policy of 'the fullest responsible disclosure,' S.Rep.No. 813, 89th Cong., 1st Sess., 3 (1965), Congress intended Exemption 5 to be 'as narro[w] as [is] consistent with efficient Government operation.' *Id.* at 9. *See* H.R.Rep. No. 1497, 89th Cong., 2d Sess., 10 (1966)." *Federal Trade Commission v. Grolier Inc.,* 462 U.S. 19, 23, 103 S.Ct. 2209, 2212, 76 L.Ed.2d 387 (1983).

Defendants in this case assert the deliberative process, or executive, privilege which has often been raised to contest FOIA requests under Exemption (b)(5). *See NLRB v. Sears, Roebuck & Co., supra; Local 3, International Brotherhood of Electrical Workers, AFL–CIO v. NLRB,* 845 F.2d 1177 (2d Cir.1988); *Wolfe v. Department of Health and Human Services,* 839 F.2d 768 (D.C.Cir.1988). For the deliberative process privilege to apply, the withheld document must be both predecisional and deliberative, thereby being "indicative of the agency's thought processes." *Local 3, IBEW, AFL–CIO v. NLRB, supra,* 845 F.2d at 1180; *see Paisley v. Central Intelligence Agency,* 712 F.2d 686, 698 (D.C.Cir.1983). The District of Columbia Circuit Court has recently held that "the reasoning and tentative conclusions of agency decisionmakers are privileged." *Wolfe v. HHS, supra,* 839 F.2d at 778.

The underlying policy of Exemption (b)(5) is to enhance the quality of agency decisionmaking. *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 151, 95 S.Ct. at 1516. By privileging predecisional intra-agency communications, Congress hoped to induce a "frank discussion of legal or policy matters." S.Rep.No. 813, 89th Cong., 1st Sess., at 9 (1965).[5] The Second Circuit has written that it is crucial to protect the deliberative process regardless of whether the decisionmaker accepts or rejects the advice given. *Lead Industries Association v. OSHA,* 610 F.2d 70, 84 (2d Cir. 1979).

The privilege is also meant to minimize public confusion: the release of unfinished drafts either before or after the agency's final decision could easily mislead the public as to the reality of agency policy. *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir. 1980). While some of the rationales underlying the deliberative process privilege cease to apply once the agency has taken

---

**5.** In the context of the executive privilege under the U.S. Constitution, the Supreme Court has written that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances ... to the detriment of the decisionmaking process." *United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974) *cited in NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 150–51, 95 S.Ct. at 1516–17.

final action, the bulk of the rationales have permanent compelling force.

The task of this Court is to determine whether the documents withheld by HHS are predecisional and deliberative. The investigation will be driven by the relevance of the policy concerns of Exemption (b)(5) to this case. The Court must focus both on the nature of the documents and on the effect of their release. *See Schell v. HHS,* 843 F.2d 933, 940 (6th Cir.1988); *Dudman Communications Corp. v. Department of Air Force,* 815 F.2d 1565, 1568 (D.C.Cir. 1987).

Defendants describe the withheld documents as "internal drafts of a regulation that contained suggested changes, marginal notes, and analyses of public comments, constituting opinions, conclusions, and advice on preparing the Final Rule." Declaration of Carl Coleman, Deputy Director of Freedom of Information/Privacy Act Division of the Office of the Assistant Secretary for Public Affairs, HHS, April 20, 1989, at ¶ 5; defendants' brief at 8–9. The Court has examined the documents and finds the description given by defendants accurate and reliable in every respect. Four documents are intra-office memoranda between agency officials discussing various policy options and comments submitted by the public after the initial notice of the proposed rule. The largest document is a preliminary draft of the regulation with many handwritten changes and additions.

The material withheld by HHS consists solely of the ancestry of the Final Rule. The memoranda, drafts, and informal written analyses all reflect movement of the agency towards generation of the Final Rule. These documents never had binding force, and any real significance contained therein was encapsulated in the Final Rule. Similarly, the withheld draft responses to public comments are direct precursors of the final official agency publication of its responses in the Federal Register. Thus all the withheld documents are predecisional.

The documents also reflect the deliberative process of HHS in reaching its final decision. The intra-office memoranda and corrected drafts of the regulation represent the give-and-take between agency officials and are clearly "indicative of the agency's thought processes," to use the language of the Second Circuit. *Local 3, IBEW, AFL–CIO v. NLRB, supra,* 845 F.2d at 1180. As previously noted, the D.C. Circuit has afforded protection under Exemption (b)(5) for "the reasoning and tentative conclusions of agency decisionmakers." *Wolfe v. HHS, supra,* 839 F.2d at 778.

Plaintiff points out that in none of the cases cited by defendants and discussed above did the agency enabling statute require the agency to consult and consider public comments in reaching a final decision. Plaintiff argues that these procedures as laid out in the Medicare Act at 42 U.S.C. § 1395u(b) are *"final* and *independent* steps of the administrative process." Plaintiff's reply brief at 3. Thus by definition, the written material generated in response to the statutory provisions cannot be predecisional or deliberative. Plaintiff's characterization of the case law is technically correct. The material protected in those cases was created not in response to specific statutory requirements but rather was the agency's unofficial way of carrying on business. But there is a profound difference between statutory duty and final agency action. The Department of Health and Human Services is required under the Medicare Act to follow certain procedures before reaching a final decision. However, the fact that the procedures are explicit does not destroy their essential predecisional nature and thus their protection under Exemption (b)(5).[6]

The policy concerns of Exemption (b)(5) apply regardless if certain predecisional steps are required by law or not. Forcing

**6.** A ruling that the explicit procedural steps of the Medicare Act remove agency documents from the protection of the deliberative process privilege and Exemption (b)(5) of the FOIA might also remove those protections from all agency consideration of public comments under the rulemaking provisions of the Administrative Procedure Act. As in the Medicare Act, the APA explicitly requires agency "consideration" of all public comments and views. 5 U.S.C. § 553(c).

HHS to release its early intra-agency drafts and analyses concerning Medicare coverage limits would dampen the free exchange of ideas just as in other contexts. There is less chance for public confusion stemming from the dissemination of premature drafts when the agency has subsequently published a clear Final Rule. But there is a lingering danger of misuse of such drafts to attempt to interpret or distort the meaning of the Final Rule. In brief, when reaching a final decision on an important policy matter, the agency must be allowed to speak with one voice through the Final Rule.

Plaintiff's allegation that HHS "swept the public comments under the carpet" is serious. Under the Medicare Act, HHS must consider these comments in good faith in reaching its final decision. The statute does not require that the agency respond to the public comments in any way,[7] yet in this case HHS devoted a large portion of its final notice to recounting and responding to the public comments. Though the responses are not exhaustive, they show that at some point in the decisionmaking process prior to the publication of the Final Rule, the agency digested and reacted to the views of the public. This Court is not willing to create an exception to the deliberative process privilege to allow plaintiff to probe further.

### C. Hearing on Conduct of Agency Official

■ Plaintiff has accused defendant Ross Cirrincione[8] of perpetrating a "deliberate scheme to impede and delay legitimate FOIA requests, thereby effectively insulating the agency from public scrutiny." Complaint ¶ 21. Plaintiff has requested that this Court hold a hearing to determine whether there was a bona fide backlog of FOIA requests which prevented a more prompt response to plaintiff's requests, or whether defendant Cirrincione intentionally delayed the process.

The proper procedure to follow in this situation is for the district court to first rule on the merits of the FOIA request. Under the FOIA, prior to any action against an individual agency employee for wrongful non-disclosure of documents, the district court must (1) order the production of the documents in question, (2) award attorney's fees and costs to plaintiff, and (3) have grounds to believe that the agency official acted arbitrarily and capriciously. 5 U.S.C. § 552(a)(4)(F). If the agency is found to have wrongly withheld documents, then the matter is referred to the Special Counsel of the Merit Systems Protection Board for disciplinary action against the agency official. Thus, since this Court has found that the withheld documents should not have been released, it obviates reference of the case to the Special Counsel or holding a hearing itself to judge defendant Cirrincione's conduct. *See Perry v. Block*, 684 F.2d 121, 125 n. 19 (D.C.Cir.1982); *Lovell v. Alderete*, 630 F.2d 428, 431 (D.C.Cir.1980). Plaintiff's request for a hearing is therefore denied.[9]

### D. Attorney's Fees

Plaintiff requests reasonable attorney's fees and costs. The FOIA provides that "[t]he court *may* assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E) (emphasis added). The Second Circuit has interpreted this provision as not requiring a final judgment in

---

7. The statute only requires HHS to "take into consideration" the public comments. The notice of the Final Rule as published in the Federal Register need only set out the factors and data relied upon and responses to the comments of the Physician Payment Review Commission. 42 U.S.C. § 1395u(b)(9)(E).

8. Chief of the Freedom of Information Branch of the Health Care Financing Administration within HHS.

9. Because of this Court's rulings that the documents were properly withheld by HHS and that no hearing will take place on defendant Cirrincione's conduct in processing plaintiff's FOIA request, it is unnecessary to rule on Cirrincione's motion to dismiss the suit against him for lack of subject matter jurisdiction or under Fed.R.Civ.P. 12(b)(6).

the action against the government, but rather only a causal link between the lawsuit and the production of any of the requested documents. *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir.1976) (Friendly, J.). The Court wrote:

> In order to obtain an award of attorney fees in a FOIA action, a plaintiff must show at minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had a substantial causative effect on the delivery of the information.

*Id.* In more closely defining this standard, the Court noted that just because the lawsuit was brought and the documents were thereafter furnished by the government does not mandate the award of attorney's fees. *Id.*

The District of Columbia Circuit Court has considered as a threshold question, prior to reaching entitlement to attorney's fees and costs, whether a plaintiff is "eligible" for such an award. *Church of Scientology of California v. Harris*, 653 F.2d 584, 587 (D.C.Cir.1981). In this regard, eligibility is established by a determination that the moving party has "substantially prevailed" within the meaning of § 552(a)(4)(E). *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, 870 (D.C. Cir.1981). Both these D.C. Circuit Court opinions concur with Judge Friendly in *Vermont Low Income* that a favorable court order releasing documents is not necessary to award fees and costs under § 552(a)(4)(E). *Church of Scientology, supra*, 653 F.2d at 587–88; *Fund for Constitutional Government, supra*, 656 F.2d at 871.

The language of § 552(a)(4)(E) is precatory, not hortatory. An analagous statutory framework for civil rights actions can be found at 42 U.S.C. § 1988, which provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Construing the legislative history and case law for such actions, courts have concluded that plaintiffs may be considered "prevail-

ing parties" for the purpose of attorney's fees if they succeed on any significant issue in litigation which achieves some of the benefits the party sought in bringing suit. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978). The Supreme Court stated in *Hensley* that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley, supra*, 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7. The approach of the First Circuit in *Nadeau* and followed by the Supreme Court in *Hensley* focuses more on whether a court orders disclosure of the withheld documents than the looser test of causation followed by the Second Circuit and the D.C. Circuit Court. *See Nadeau, supra*, 581 F.2d at 278.

This Court recently granted plaintiff Archer attorney's fees in a prior FOIA lawsuit she brought against HHS. *Archer v. Department of Health and Human Services et al.*, 710 F.Supp. 909 (S.D.N.Y.1989) (Duffy, J.). In that case, Archer had won final judgment for disclosure of one of two documents which she had sought. In addition, other documents had been released by the government after the filing of the lawsuit. Judge Duffy relied on *Vermont Low Income* to grant fees and costs to plaintiff. *Archer v. HHS et al., supra*, at 912.

In the instant action, the Court declines to award plaintiff Archer fees and costs at this time. Summary judgment has now been awarded to defendants, and it is uncertain whether plaintiff has "substantially prevailed" in this action under the statute and the case law. The briefing provided by the parties on the issue of fees and cost was scant, and the Court would like further guidance before entering a final decision on this issue. Unless plaintiff specifically withdraws her request for attorney's fees and costs, the briefing schedule on this issue will be as follows: plaintiff's papers in support of her request will be served and filed on or before November 13, 1989; defendants' papers in opposition to plaintiff's request will be served and filed on or be-

fore December 4, 1989; and plaintiff's reply papers will be served and filed on or before December 11, 1989.

## CONCLUSION

Defendants' motion for summary judgment on the issues of document disclosure and the requested hearing on defendant Cirrincione is granted. Plaintiff's motion for summary judgment on these issues is therefore denied. Decision on plaintiff's motion for attorney's fees and costs is deferred pending further briefing by the parties.

SO ORDERED.