NEW YORK CITY MANAGERIAL EM-
PLOYEE ASSOCIATION, George Caul-
field, William H. Dworkin, John L.
Hendrickson, Charles D.W. Kirnon,
Philip Levine, Frank Meyer, Anthony
Punzi, Thomas Sweetman, Harold
Yourman, James B. McNally, Ronald L.
Savitt, Mitchel Saed, Blanche Barth
and Fred Ewald, on Behalf of them-
selves and all others situated, Plain-
tiffs,

v.

David N. DINKINS, as Mayor of the City
of New York, Elizabeth Holtzman, as
Comptroller of the City of New York,
the New York City Health and Hospi-
tals Corporation, the New York City
Transit Authority and the Board of Ed-
ucation of the City School District of
the City of New York, Defendants.

No. 91 Civ. 2693 (CBM).

United States District Court,
S.D. New York.

April 16, 1992.

Joan Stern Kiok, New York City by Joan
Stern Kiok, for plaintiffs.

Wachtell, Lipton, Rosen & Katz, New
York City by Norman Redlich, Ralph M.
Levene, Jeffrey I. Lang, for defendants
Mayor David N. Dinkins, Comptroller Eliz-
abeth Holtzman, the New York City Health

and Hospitals Corp. and the B. of Educ. of the City School Dist. of the City of New York.

New York City Transit Authority, Brooklyn by Albert C. Cosenza, Vice President and Gen. Counsel Kenneth Howard Schiffrin, for defendant New York City Transit Authority.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### I. Background.

This case arises out of the issuance in October 1990 of a mayoral directive that (1) froze the salaries of New York City employees not subject to collective bargaining contracts ("Managers") who were earning salaries over $40,000 per year, and (2) cut by five percent the salaries of Managers earning over $70,000 per year (the "Mayoral Directive"). The salary freeze and pay cut were continued by a subsequent directive issued in July 1991. In response to a request from Mayor Dinkins, other defendants in this case took similar, but not identical, salary actions.

Plaintiffs contend that these salary actions violated the Federal and New York State equal protection guarantees by irrationally discriminating between Managers and non-managerial employees,[1] (the latter having received salary increases since the salary actions went in force). Plaintiffs also contend that the Mayoral Directives violate Federal and State constitutional due process guarantees for similar reasons.

In light of forthcoming cross-motions for summary judgment, the court limited discovery in this action. In order to oppose defendants' motion for summary judgment, plaintiffs were permitted to depose New York City Commissioner of Labor Relations James F. Hanley. That deposition took place on March 12, 1992. During the deposition, defendants' counsel objected to twenty five questions posed by plaintiffs' counsel under the claim of deliberative process privilege.

Meanwhile, a discovery dispute arose in this case surrounding plaintiffs' First Request of Documents. Defendants provided the requested documents in part, but withheld or redacted several under the claim of deliberative process and/or attorney-client privilege. The parties brought this matter before Judge Sprizzo in Part I on February 14, 1992. On February 20, 1992, Judge Sprizzo referred the matter to a magistrate judge; Magistrate Judge Katz was assigned on March 2, 1992. On March 23, 1992, this court ordered that the issue would be returned to Judge Motley for determination. The documents in question were submitted to the court for *in camera* inspection.

A hearing was held on April 16, 1992 on both the documents and deposition disputes. The issues to be decided are: (1) whether defendants were justified in withholding or redacting the requested documents on the ground of deliberative process privilege and/or attorney-client privilege; and (2) whether counsel for the defendants was justified in directing Commissioner Hanley not to respond to a number of questions under the claim of deliberative process privilege.

### II. The Deliberative Process Privilege.

▋ In a case presenting both federal and pendent state substantive law claims, such as this case, "principles of federal law" govern the assertion of evidentiary privileges. *Von Bulow v. Von Bulow*, 811 F.2d 136, 141–42 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *see State of New York v. Cedar Park Concrete Corp.*, 130 F.R.D. 16, 21 (S.D.N.Y.1990). *See also* Federal Rule of Evidence 501.

The federal deliberative process, or executive, privilege "protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Hopkins v. United States Dep't of Housing and Urban Dev.*, 929 F.2d 81, 84 (2d Cir.1991); *see*

---

**1.** The term "non-managerial employees" covers all non-managers, whether or not they are covered by collective bargaining.

*NLRB v. Sears Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975); *Mary Imogene Bassett Hospital v. Sullivan,* 136 F.R.D. 42, 44 (N.D.N.Y. 1991). The privilege is premised upon the assumption that "effective and efficient governmental decision making requires a free flow of ideas among government officials and that inhibitions will result if officials know that their communications may be revealed to outsiders." *In re Franklin Nat'l Bank Sec. Litig.,* 478 F.Supp. 577, 580–81 (E.D.N.Y.1979); *see Archer v. Cirrincione,* 722 F.Supp. 1118, 1122 (S.D.N.Y. 1989).

■ The deliberative process privilege applies to governmental communications that are (1) predecisional and (2) deliberative. *See Hopkins,* 929 F.2d at 84; *Mary Imogene,* 136 F.R.D. at 44; *Archer,* 722 F.Supp. at 1122. In order to qualify as "deliberative," a communication must be indicative of the thought processes of governmental actors. *See Local 3, IBEW, AFL–CIO v. NLRB,* 845 F.2d 1177, 1180 (2d Cir.1988); *Archer,* 722 F.Supp. at 1122. *See also Hopkins,* 929 F.2d at 84 (communications must be " 'deliberative,' that is, 'actually ... related to the process by which policies are formulated.' ").

### A. The Documents Requested.

■ In this case, the documents withheld or redacted by the defendants on the ground of deliberative process privilege clearly satisfy the test set forth above. Ten of the twelve documents at issue (items 1–2, 4–11) are predecisional, having been generated before a final decision had been reached with respect to the subject matter of the communication. Those ten documents are also deliberative, memorializing communications among and within City agencies concerning policy issues and alternatives with respect to managerial salaries, benefits and employee/employer relations. Each expresses ideas or transmits recommendations to a governmental decisionmaker for the purpose of aiding that decisionmaker in arriving at a policy decision.

Item 12 consists of drafts of a report by the New York City Managerial Review Commission, an agency composed of public and private sector management experts which advises the Mayor on issues concerning the City's managerial work force. These drafts are also protected by the deliberative process privilege since they embody the ideas that went into the final draft. The privilege is designed to foster the free flow of such ideas.

### B. Commissioner Hanley's Deposition.

The disputed questions posed to New York City Commissioner of Labor Relations James F. Hanley at his March 12, 1992 deposition also fall within the deliberative process privilege. Each of the questions called for the disclosure of City government deliberations regarding issues that had not been decided. Again, the purpose of the privilege is to ensure that the quality of government decisions is not compromised by subjecting all government discussion to public scrutiny. For that reason, the disputed deposition questions are protected.

### C. Plaintiffs' Arguments.

Plaintiffs' main argument is that the deliberative process privilege is inapplicable when the thought processes of defendant public officials are themselves genuinely in dispute. Plaintiffs are correct in this statement of the law, *see Department of Economic Dev. v. Anderson,* 139 F.R.D. 295 (S.D.N.Y.1991), but misapply the rule to the facts in this case. Here, the thought processes of the defendants are not in issue.[2]

■ Plaintiffs have claimed a constitutional violation of equal protection and due process. To sustain such a challenge, plaintiffs must show that state classifications are not rationally related to any legitimate state purpose. *See FSK Drug Corp.*

---

**2.** Because this court holds that defendants' predecisional deliberations are not in issue in this case, there is also no merit to plaintiffs' argument that defendants have waived their right to invoke the deliberative process privilege by asserting as a defense to plaintiffs' constitutional claims that the challenged salary actions were rational.

*v. Perales*, 960 F.2d 6, 9 (2d Cir.1992) (citing *Western & Southern Life Insurance Co. v. State Board of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981)); *Golden v. Clark*, 76 N.Y.2d 618, 623–24, 563 N.Y.S.2d 1, 564 N.E.2d 611 (1990). Thus, in this case plaintiffs must demonstrate that defendant City officials had no legitimate objective for instituting and continuing the Mayoral Directive and related salary actions or that the means chosen to implement its policy were not rationally related to the City's purpose.

To prove its case, plaintiffs will gain nothing by discovering what the defendant City officials were thinking before they finally decided to implement the Mayoral Directive and related salary actions. The alternatives considered are of no moment in this case. Defendants' deliberations can provide no evidence of whether their stated objective was legitimate on its face or whether the Mayoral Directive and related salary actions were rationally related to achieving the objective.

III. Attorney-client Privilege.

■ Defendants have noted that five of the twelve items in issue (items 2, 3, 7, 9, 11) have been withheld or redacted on the ground of the attorney-client privilege. The court agrees that each of these items contain a discussion of legal advice given by the New York City Corporation Counsel to City officials and/or agencies and are therefore protected by the attorney-client privilege.

SO ORDERED.