Dear Representatives Williams,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following question:
 Is a citizen's right to be a candidate for public office unconstitutionally infringed by 70 O.S. 5-113 (1992), which provides that no person shall be eligible to be a candidate for a board of education if he or she is: 1) currently employed by a school district governed by the Board, or 2) is related within the second degree of affinity or consanguinity to any member of that Board, or 3) is so related to any employee of the school district?[1]
¶ 1 As the United States Supreme Court recently held inBurdick v. Takushi, U.S. ___, 112 S.Ct. 2059, 2063,119 L.Ed.2d 245 (1992), when a court considers a challenge to a State election law, it must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against `the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration `the extent to which those interests make it necessary to burden the plaintiff's rights.'"
¶ 2 Under this standard, as the Burdick Court noted, "the rigorousness of our [the Court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." Id.
Thus, the Court has recognized that when such rights are subject to "severe" restrictions, the regulations must be "narrowly drawn to advance a state interest of compelling importance." Id.
quoting from Norman v. Reed, 502 U.S., 112 S.Ct. 698, 705,116 L.Ed.2d 711 (1992). However, under these standards, when a State election law imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. Anderson v.Celebrezze, 460 U.S. 780, 788, 103 S.Ct. 1564, 1570,75 L.Ed.2d 547 (1983).
¶ 3 The threshold determination to be made in responding to your question is whether the provisions of 70 O.S. 5-113 (1992) require that they be subject to rigorous or close scrutiny, rather than the more traditional reasonably related analysis. As the United States Supreme Court recognized in Anderson v.Celebrezze, provisions in an election code, whether they govern the "registration and qualifications of the voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects — at least to some degree — the individual's right to vote and his right to associate with others for political ends." 103 S.Ct. at 1570. However, the mere fact that a State's system "creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny." Burdick v. Takushi,112 S.Ct. at 2063, quoting from Bullock v. Carter, 405 U.S. 134, 143,92 S.Ct. 849, 31 L.Ed.2d 92 (1972). Also see Anderson v.Celebrezze, 460 U.S. 780, 788 (1983).
¶ 4 In a situation similar to the one presented in your question, the New York Court of Appeals in Golden v. Clark,564 N.E.2d 611 (N.Y. 1990) upheld a city charter provision which required that higher city officials forego certain political party offices as qualifications for holding public office. In upholding the statute, the New York court found that the challenged statute could be sustained against an equal protection challenge if it is shown to be "rationally related to some conceivable and legitimate State interest." 564 N.E.2d at 615. The New York court correctly recognized that generally, the United States Supreme Court has identified two types of ballot access restrictions which involve fundamental rights and thus require heightened scrutiny: 1) restrictions based upon wealth, and 2) restrictions which unfairly burden the availability of political opportunity because of classifications which impose special burdens on new or small political parties or independent candidates. 564 N.E.2d at 614.
¶ 5 Of course, heightened scrutiny would also be required if the law's classification was one involving a suspect class, such as a class based on race or religion. Eg., Clements v. Fashing,457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d. 508 (1982). In both Golden and the case presented by your question, the law's classifications are neither based on a suspect classification of wealth, nor do they impose a special burden on new or small political parties or independent candidates. Thus, as in Golden, the statute about which you inquire is not subject to heightened scrutiny, but rather is subject to the "rationally related" standard.
¶ 6 In applying the "rationally related" standard and upholding the statute the New York Court in Golden noted that the claims were similar to those of plaintiffs in Matter of Rosenstock v.Scaringe, 387 N.Y.Supp.2d 716 (N.Y.S.Ct. 1976), affirmed,Rosenstock v. Scaringe, 357 N.E.2d 347 (N.Y. 1976), a case that directly involved a challenge to a nepotism provision.
¶ 7 In Rosenstock, a candidate for election to a school board challenged a provision of the New York education laws that required that no more than one member of a family could be a member of the same board of education in any school district. TheRosenstock case, like Golden v. Clark, specifically held that the standard to be applied was the "rationally related" standard. So holding, the Rosenstock Court stated:
 [W]here, as here, the legislation in question does not directly infringe upon the right to vote, but only indirectly infringes upon that right by excluding a certain class of citizens from eligibility to seek public office, the less strict standard of judicial review is applicable to test the constitutionality of that legislation. Accordingly, the legislation here in issue is entitled to the traditional presumption of constitutionality and the appellant has the burden of overcoming this presumption beyond a reasonable doubt. (Citations omitted).
 Under the traditional test of constitutionality the question is whether the legislative classification is rationally related to the promotion of a legitimate state interest.
387 N.Y.Supp.2d at 718 (emphasis added).
¶ 8 In the question you present, there is a rational relationship between the goals to be achieved by the nepotism prohibition and the means sought to achieve them. At the very least, the nepotism statute 1) discourages or minimizes favoritism and the emergence of disciplinary problems, 2) inhibits personal and professional cliques, 3) avoids conflicts of interest and divided loyalties, and 4) insures independence of judgment. The provisions of 70 O.S. 5-113 (1992), and the classifications established in the statute are clearly rationally related to the promotion of these legitimate state interests listed above. Title 70 O.S. 5-113 (1992) provides:
 No person shall be eligible to be a candidate for or serve on a board of education if he or she is currently employed by the school district governed by that board of education or is related within the second degree of affinity or consanguinity to any other member of the board of education or to any employee of the school district governed by the board of education, it being the purpose of this section both to prohibit persons who are related within the second degree by affinity or consanguinity from serving simultaneously on the same board of education of any school district of this state and to prohibit persons who are related within the second degree of consanguinity or affinity to an employee of a school district from serving on the board of education governing the school district while such relative is employed. These prohibitions shall not apply to prevent members of boards of education who are serving on September 1, 1992, from serving the term for which they were elected or from serving successive terms for which they may be elected.
 Any member of a board of education who violates the provisions of this section shall be subject to the penalties prescribed by Sections 21 O.S. 485 and 21 O.S. 486 of Title 21 of the Oklahoma Statutes.
¶ 9 This section's first prohibition, that prohibiting employees of the school district governed by the board from being members of the board, clearly avoids conflicts of interest inherent in one individual being both a "manager" and a member of the "labor force" with which management must deal.
¶ 10 The second prohibition, that prohibiting two persons within the second degree of consanguinity from being on the board at the same time, clearly is related to the goals of fostering independence of judgment and the avoidance of cliques. As the New York Supreme Court noted in Rosenstock v. Scaringe,387 N.Y.Supp.2d, at 719, "[b]y prohibiting more than one member of the same household from serving on the same board the statute insures that a board of education will represent a wide rather than a narrow cross-section of the community it serves and that each member of a board of education will be able to debate policy issues with fellow board members at arms' length rather than under any possible inhibition that might exist because of the intimate relationship with another member of the board."
¶ 11 The final prohibition of 70 O.S. 5-113 (1992), the prohibition against a person being a member of the board if related within the second degree of consanguinity or affinity to an employee of the school district governed by the school board, also clearly serves to avoid conflict of interest, avoids cliques and favoritism, and promotes independence of judgment. The statute's prohibitions are, as demonstrated, rationally related to the legitimate state interest the statute seeks to promote. Thus, we conclude that the anti-nepotism provisions of 70 O.S.5-113 (1992), measured by the traditional "rationally related" analysis, are entitled to the traditional presumption of constitutionality, and when so measured, are constitutional.
¶ 12 It is, therefore, the official opinion of the AttorneyGeneral that the provisions of 70 O.S. 5-113 (1992), whichprovide that no person shall be eligible to be a candidate toserve on a board of education if he or she (1) is currentlyemployed by the school district governed by the board ofeducation, or (2) is related within the second degree by affinityor consanguinity to any other member of the board of education,or (3) is related within the second degree by affinity orconsanguinity to any employee of the school district governed bythe board, do not unconstitutionally restrict a person's right tobe a candidate for public office.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL
[1] In 1992, the Legislature amended both 70 O.S. 5-113 and70 O.S. 5-113.1. Section 70 O.S. 5-113.1, prohibits various actions by school board members, but by its very terms does not make anyone ineligible to be a candidate for a school board: "Nothing herein shall be construed to make any person ineligible to become a candidate for the board of education. "The companion provision of law, section 5-113, the provision we address in this opinion, does, as you know, make various persons ineligible to be a candidate for membership on some school boards.