QUESTION PRESENTED AND CONCLUSION Question: Are the following individuals barred from service on Colorado's judicial nominating commissions because they hold "elective political party office" within the meaning of Article VI, § 24 of the Colorado Constitution:
• precinct committeepersons,
 • officers of county central committees, state central committees, congressional central committees and similar committees described in section 1-3-103
C.R.S., or
 • additional members of these Committees where allowed by population and polling?
 Answer: Yes. An "elective political party office" is an office within a political party that is filled by popular election rather than appointment. Precinct committeepersons, persons who are elected officers of various party committees, and additional members, selected through elections, hold "elective political party office." They are constitutionally barred from serving on judicial nominating commissions.
 BACKGROUND
In 1966, Colorado's voters approved Article VI, § 24
of the Colorado Constitution, a provision known as the "Missouri Plan," for nominating and selecting judges. The Missouri Plan is intended to create an independent judiciary by removing the courts from politics. It frees judges "from the pressures of politics and campaigning" and enables them "to devote their full time and attention to the conduct of judicial business." Analysisof 1966 Ballot Proposals, Research Publication No. 110 (1966) p. 13.
As a part of this reform in 1966, the voters established "judicial nominating commissions" for justices and judges. The members of judicial nominating commissions are attorneys, lay persons and members of various political parties, a mixture that varies depending upon the particular commission involved. Art. VI, §§ 24(2) and (3). Attorney members are selected by the Chief Justice, the Governor, and the Attorney General. Art. VI, § 24(4). Other members are selected by the Governor. Id. The nomination process is designed to ensure "that full consideration has been given to the ability, character and qualifications of a judicial candidate before his name is permitted to go on the ballot." Analysis of 1966 Ballot Proposals, supra., at p. 14.
The question presented in this opinion focuses upon a qualification for judicial nominating commission members found in one part of Article VI, § 24(4). This provision says:
 No voting member of a judicial nominating commission shall hold any elective and salaried United States or state public office or any elective political party office and he shall not be eligible for reappointment to succeed himself on a commission.
(Emphasis added.)
 LEGAL ANALYSIS
Article VI, § 24(4) of the Colorado Constitution bars persons who hold "elective political party office" from appointment to a judicial nominating commission. The issue presented in this opinion is whether the term "elective political party office" includes the following officials within Colorado's political parties:
• precinct committeepersons,
 • officers of county central committees, state central committees, congressional central committees and similar committees described in section 1-3-103
C.R.S., or
 • additional members of these Committees where allowed by population and polling.
The legal standards that govern this inquiry are straightforward. "[A] court's duty in interpreting a constitutional amendment is to give effect to the will of the people adopting such amendment." Urbish v. Lamm,761 P.2d 756, 760 (Colo. 1988); In re InterrogatoriesPropounded by Senate Concerning House Bill 1078,536 P.2d 308, 313 (Colo. 1975). When the words and phrases used in a constitutional provision are plain and unambiguous, the legal inquiry is at an end. They are to be given their plain and unambiguous meaning. Bolt v.Arapahoe County School Dist. No. Six, 898 P.2d 525, 532
(Colo. 1995); Kane v. Town of Estes Park, 786 P.2d 412,415 (Colo. 1990).
The term "elective political party office" in Article V, § 24 is clear and unambiguous. First, an "office" is "a position of duty, trust or authority, esp. one conferred by a governmental authority for a public purpose." Black's Law Dictionary 1112 (7th ed.). Second, an "elective office" is "an office that is filled by popular election rather than by appointment." Black's LawDictionary 537 (7th ed.). Third, Colorado's Election Code defines two types of political parties: major political parties and minor political parties. Section1-1-104(25), C.R.S. (2003). A "major political party" is "any political party that at the last preceding gubernatorial election was represented on the official ballot either by political party candidates or by individual nominees and whose candidate at the last gubernatorial election received at least ten percent of the total gubernatorial vote cast." Section 1-1-104(22), C.R.S. (2003). A "minor political party" is "a political party other than a major political party that satisfies one of the conditions set forth in section 1-4-1303(1) or has submitted a sufficient petition in accordance with section 1-4-1302." Section 1-1-104(23), C.R.S. (2003).
Based upon these definitions, the meaning of an "elective political party office" in Article VI, § 24 is apparent. It is a party office filled through a vote of members of a political party.
Colorado's Election Code governs the organization of major political parties. It establishes the position of precinct committeeperson and declares that the position is an office. Section 1-3-102(2)(a), C.R.S. (2003). Precinct committeepersons are elected at precinct caucuses. Id. The Election Code also provides for the establishment of county, congressional, judicial district, state senatorial district, and state representative district central committees. Each of these central committees consists of persons and elected officials designated by statute. Each central committee must elect a chairperson, a vice chairperson and a secretary. The parties may elect persons to other offices created pursuant to party bylaws. Section1-3-103(1)-(7), (10), C.R.S. (2003). Additional committee members are allowed the political parties based on polling numbers in preceding elections, and are elected by the county central committees. Section1-3-103(2)(a), (3)(b) and (4)(b).[1]
[1] Members of minor political parties may be barred from serving on judicial nominating commissions if they are elected to their state central committee or other committees authorized by their constitution or bylaws. See § 1-4-1301, C.R.S. (2003).
The courts have defined as "political party offices" positions similar to those established in § 1-1-103.Lefkowitz v. Cunningham, 431 U.S. 801, 803 n. 2 (1977) (position of member of New York State Democratic Committee and Bronx County Democratic Committee are political party offices); Fletcher v. Marino, 882 F.2d 605,608, 613 (2d Cir. 1989) (membership on party committee deemed party office); State ex rel. McCulloch v.Hoskins, 978 S.W.2d 779, 783 (Mo.App. 1998) (political party committeeman is an office); In re Ganzman,574 A.2d 732, 733 (Pa. 1990) (committeeperson is a political party office); Golden v. Clark, 563 N.Y.S. 2d 1,3, n. 1, 564 N.E.2d 611, 613 n. 1 (1990) (position of member of national or state committee of a political party is a political party office).
Precinct committeepersons and members of the various central committees, including additional memberships that are authorized pursuant to section 1-3-103(2)(a), (3)(b) and (4)(b), hold political party offices. Precinct committeepersons, the chairperson, vice chairperson and secretary of the central committees and the additional members are elected by various constituencies within the party. These individuals hold their offices through elections. As such, they occupy elective political party offices.
Finally, this obvious interpretation of the constitution supports the intent of Colorado's voters to maintain an independent judiciary by insulating the judicial nominating process from politics:
 Independence is essential to the successful operation of a Judicial Nominating Commission. Independence in this instance means the freedom to recruit, screen and nominate judicial candidates as the commission sees fit, apart from undue influences stemming from political personal social, or business considerations...
 Nominating commissions should respect the value of an independent judiciary. At various times, commissioners may be unduly influenced by political or personal considerations that compromise the objectivity and fairness of the nomination process. Thus, commissioners should endeavor to reduce all undue influences based on a judicial candidate's political affiliations, an appointing authority's political agenda, or the commissioner's own political affiliations.
American Bar Association Standing Committee on Judicial Independence, Standards on State Judicial Selection 13 (Report of the Commission on State Judicial Selection Standards) (July 2000).
Various courts have recognized this purpose of the Missouri Plan. The exclusion of persons who hold elective political party offices from the judicial nomination process "is intended to eliminate conflicts of interest that arise when high public officials are simultaneously subject to the demands of both their constituencies and their political parties, to broaden opportunities for political and public participation, to reduce the opportunities for corruption inherent in dual officeholding, and through all of thee methods, to increase citizens' confidence in the integrity and effectiveness of their government." Golden v. Clark,563 N.Y.S. 2d at 6, 564 N.E.2d at 615. In Nipper v.Smith, 39 F.3d 1494 (11th Cir. 1994), the Court explained that "[t]hese changes in Florida's constitution were clearly designed to eliminate the vices of partisan, electoral politics from the process of selecting state court judges. The goal of merit selection of judges, naturally, is to insulate them from popular pressure and to make them more willing to decide an unpopular case fairly and impartially while, at the same time, raising the level of qualifications of judicial officers." Id. at 1501. Finally, the United States Supreme Court has emphasized the interest in maintaining the integrity of the judiciary. "A campaigning Justice of the Peace might be tempted to render decisions and take actions that might serve more to further his political ambitions than the responsibilities of his office. The State's interests are especially important with regard to judicial officers. It is a serious accusation to charge a judicial officer with making a politically motivated decision." Clements v. Fashing, 457 U.S. 957, 968
(1982); Peterson v. Stafford, 490 N.W.2d 418, 422-423
(Minn. 1992) (discussing the negative effect of the political process on the judiciary).
 CONCLUSION
Precinct committeepersons, chairpersons, vice chairpersons, secretaries and other persons who are officers of political party central committees, and additional members of central committees who are authorized by statute are elected to political party offices. They hold "elective political party offices" within the meaning of Article VI, § 24 of the Colorado Constitution. They are therefore barred from serving on a judicial nominating commission.
Issued this 12th day of April, 2004.

 ______________________________
 KEN SALAZAR
 Colorado Attorney General
 MAURICE KNAIZER
 Deputy Attorney General
 MARK VALENTINE
 Assistant Attorney General