■ CHARLES W. RYAN et al., Appellants, v ALBANY COUNTY DEMO-CRATIC COMMITTEE et al., Respondents.—Appeal from an order of the Supreme Court at Special Term, entered January 25, 1979 in Albany County, which (1) granted defendants' motions to dismiss and for summary judgment dismissing plaintiffs' complaint, and (2) denied plaintiffs' cross motion for summary judgment. Plaintiffs, in a declaratory judgment action, contend that the appointment of defendant Raymond J. Kinley, Jr., as the Democratic Election Commissioner for the County of Albany was null and void, and they seek a permanent injunction enjoining Kinley from taking such office. On November 28, 1978 the Albany County Legislature received from the Chairman of the Albany County Democratic Committee a certificate recommending Raymond J. Kinley, Jr., an enrolled Democrat residing in the City of Albany, for the office of Democratic Election Commissioner for the County of Albany for a two-year term commencing January 1, 1979. On December 5, 1978 Supreme Court at Special Term ruled that the certificate of party recommendation was invalid and temporarily restrained the Albany County Legislature from acting upon said certificate of party recommendation because it had been made upon vote of the executive committee of the Albany County Democratic Committee rather than upon the vote of the full county committee, as required by section 3-204 of the Election Law. On December 19, 1978 the Albany County Legislature adopted Resolution No. 319. The resolution acknowledged that the certificate of party recommendation filed by the Democratic committee had been declared null and void by the Supreme Court, and that said court had restrained the Legislature from acting upon said certificate. Resolution No. 319 thereafter provides that it is the duty of the Albany County Legislature to appoint election commissioners notwithstanding the fact that certificates of party recommendation are invalid. The resolution appoints defendant Kinley as Democratic Commissioner of Elections for a term commencing January 1, 1979 and ending December 31, 1980. Section 8 of article II of the New York State Constitution provides that election boards be bipartisan, and that the officers of boards of elections "shall be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the legislature may direct". Article IX (§ 1, subd [b]) of the State Constitution provides that: "All officers of every local government whose election or appointment is not provided for by this constitution shall be elected by the people of the local government, or of some division thereof, or appointed by such officers of the local government as may be provided by law." The New York State Constitution requires a bipartisan board of elections and, since the election or appointment of election commissioners who are unquestionably officers of a local government, is not provided for in the Constitution itself, the manner of their appointment is, therefore, provided by the provisions of the Election Law. To carry out the constitutional mandate of section 8 of article II of the State Constitution, section 3-204 of the Election Law was enacted, the pertinent provisions of which are as follows: "1. At least thirty days before the first day of January of any

year in which a commissioner of elections is to be appointed, the chairman or secretary of the appropriate party county committee shall file a certificate of party recommendation with the clerk of the appropriate local legislative body. 2. Party recommendations for election commissioner shall be made by a majority vote of the county committee. * * * 4. Commissioners of election shall be appointed by the county legislative body, or in the city of New York, by the city council. Provided, however, that if a legislative body shall fail to appoint any person recommended by a party for appointment as a commissioner pursuant to this section, within thirty days after the filing of a certificate of recommendation with such legislative body, then the commissioner shall be appointed by the members of such legislative body who are members of the political party which filed such certificate." It is evident that the New York State Constitution requires that the power to appoint election commissioners be vested in the people of the local government or their duly elected or appointed officers and the Legislature by enacting section 3-204 of the Election Law declares that the appointive power shall be delegated to the local legislative body. The contention of plaintiffs that in the event a party fails to make a recommendation, or in the event a party recommendation is declared invalid after the time to recommend has expired deprives the Legislature of the power to appoint is in clear contravention of the New York State Constitution. With the constitutional framework in mind, section 3-204 of the Election Law establishes that in the event a party fails to make a timely recommendation, or makes a recommendation which is declared invalid after the party's time to do so has expired, the Legislature continues to be vested with not only the right, but the duty to appoint an election commissioner. Interpreting subdivision 4 of section 3-204 of the Election Law in conjunction with the constitutional mandates set forth in section 8 of article II and article IX (§ 1, subd [b]) of the Constitution clearly indicates that the language of subdivision 4, namely, "Commissioners of election *shall* be appointed by the county legislative body" (emphasis added) is directive rather than permissive, and imposes a constitutionally based duty upon the local legislative body to act to appoint election commissioners even if a party fails to make a recommendation or makes an invalid recommendation. Defendants assert that under the circumstances here, it was not only the right but a constitutionally imposed obligation on the Albany County Legislature to appoint an election commissioner, and that the adoption of Resolution No. 319 by a majority of the members of the county legislature on December 19, 1978 is conclusive proof of the preservation of the mandated bipartisanship of the office of Commissioner of Elections (cf. *Matter of Alvaro v Baar,* 67 Misc 2d 489). The appointment of Kinley by the county legislature on December 19, 1978 complied in time and manner with the appointment process set forth in section 3-204 of the Election Law. There is no restriction on the county legislature's appointing authority where the county committee of the party has failed to file a valid certificate recommending a person for the office of Commissioner of Elections. The county legislature properly and validly appointed Raymond J. Kinley, Jr., as the Democratic Commissioner of Elections for the two-year term commencing January 1, 1979. Order affirmed, without costs. Mahoney, P. J., Kane and Staley, Jr., JJ., concur.

Sweeney and Main, JJ., dissent and vote to reverse in the following memorandum by Sweeney, J. Sweeney, J. (dissenting). We are unable to agree with the reasoning or result reached by the majority and, therefore, dissent and vote to reverse. We find no basis in the New York State Constitution, legislative history or the clear language of section 3-204 of the

Election Law for such a conclusion. The following undisputed facts, in addition to those enumerated by the majority, may be helpful in understanding the controversy. Plaintiff, Charles W. Ryan, has been the Albany County Democratic Election Commissioner for some 20 years. His most recent term of office was to expire at midnight, December 31, 1978. Prior thereto and on November 28, 1978, the Albany County Democratic Party Executive Committee, by a majority vote, recommended defendant Kinley for the position. While we agree with the majority that the New York State Constitution and section 3-204 govern the appointment of commissioners of election, to conclude that section 3-204 authorizes the procedure adopted under the instant circumstances is out of harmony with the intent and history of this legislation to provide for bipartisan representation on Boards of Election. A careful reading and analysis of this statute and particularly subdivision 4 of section 3-204 of the Election Law compels us to conclude that Special Term and the majority mistakenly rely on subdivision 4 as authorization for the instant action by the defendant county legislature. This subdivision clearly contemplates a situation where there is a valid filing of a certificate of recommendation. It specifically states *"within thirty days after the filing of a certificate of recommendation"* (emphasis supplied). The majority blithely ignores this plain language. Concededly, a certificate reflecting a majority vote of the county committee was not filed here. Lacking this prerequisite there is a failure to comply with the implementing statute. The appointment therefore, of defendant Kinley is a nullity since it was unauthorized by law. This conclusion is buttressed by the significant fact that previously section 3-204 contained a subdivision 6 which was repealed effective December 1, 1977 (L 1976, ch 234, § 9). This former subdivision authorized the appointment of an election commissioner of a party in default for failure to timely file a certificate of party recommendation. This is comparable to the circumstances we are confronted with here where a proper certificate was never filed. It is reasonable and logical to conclude that the Legislature by its action of repealing subdivision 6 intended that an election commissioner not be appointed by the county legislature where the appropriate party failed to file the proper certificate. A contrary conclusion ignores the generally accepted principles of construction. Where sections of a statute are repealed, the court may look to the repealed portions in order to ascertain the sense of the residue *(Lemmon v People,* 20 NY 562; McKinney's Cons Laws of NY, Book 1, Statutes, § 97). It is equally reasonable and logical to assume that the Legislature did not intend this essential position remain vacant with no procedure to fill it. The Legislature is presumed to be aware of any other pertinent and relevant legislation extant to implement its intent to preserve bipartisan representation on boards of election (see *Easley v New York State Thruway Auth.,* 1 NY2d 374, 379; *Matter of Erikson v Helfand,* 1 AD2d 59, affd 1 NY2d 775). With this in mind we are of the view, as urged by plaintiff, that section 5 of the Public Officers Law is applicable. Said section, insofar as is relevant herein, provides that "Every officer [with certain exceptions not here relevant] having duly entered on the duties of his office, shall * * * hold over and continue to discharge the duties of his office, after the expiration of the term for which he shall have been chosen, until his successor shall be chosen and qualified; but after the expiration of such term, *the office shall be deemed vacant for the purpose of choosing his successor.* An officer so holding over for one or more entire terms, shall, for the purpose of choosing his successor, be regarded as having been newly chosen for such terms. An appointment for a term shortened by reason of a predecessor holding over,

shall be for the residue of the term only" (Public Officers Law, § 5; emphasis added). A fair reading of these two statutes demonstrates to us that they harmoniously compliment one another, in that section 5 of the Public Officer's Law provides for a vacancy which may be filled by the county legislature at any time pursuant to the procedures mandated by section 3-204 of the Election Law. The judgment, therefore, should be reversed and one entered in favor of plaintiff Ryan directing that he shall hold over and continue to discharge his duties until a successor is chosen and qualified to fill the vacancy. [97 Misc 2d 935.]