OPINION OF THE COURT
Joseph R. Glownia, J.
The instant litigation concerns itself with the appointive *702 four-year term, commencing January 1, 2003, of Democratic Commissioner of the Board of Elections of the County of Alle-gany, New York. Petitioners/plaintiifs (hereinafter petitioners) are female members of the Democratic Party of Allegany County and each were recommended/certified on two different occasions (Beatrice Joan Lester on Sept. 11, 2002, and Diane Martin on Nov. 12, 2002) by a majority of the Democratic Party County Committee of Allegany County as a suitable and qualified person for appointment to the office of Democratic Commissioner of Elections. Respondent/defendant Bruce W. Reuning (hereinafter Reuning) is the current Democratic Commissioner of the Board of Elections whose four-year term expired on December 31, 2002, and who continues to occupy the position as a “holdover.” Respondent/defendant James Gall-man (hereinafter Gallman) is the Republican Commissioner of the Board of Elections of the County of Allegany. Respondents/ defendants Rodney K. Bennett et al. are members of the Alle-gany County Board of Legislators (hereinafter Board) and are sued as the Legislative Board. Respondent/defendant County of Allegany is a county in New York State and is a municipal corporation.
In their six causes of action in the petition/complaint, petitioners seek various forms of relief, including CPLR article 78, declaratory judgment, and 42 USC § 1983, sex discrimination damages. They urge this court to apply the clear language of the appointing statute, section 3-204 of the Election Law, to require the Board to choose one of them as Democratic Commissioner of the Board of Elections of the County of Allegany. All respondents moved to dismiss the petition/complaint and cross-moved for attorneys’ fees and costs pursuant to 42 USC § 1988. These motions were denied at the conclusion of oral argument heard on January 31, 2003, and defendants/ respondents were directed to file and serve their answer. As for the affirmative relief requested by petitioners, decision was reserved.
The following undisputed facts are controlling: (1) the Alle-gany County Democratic Committee has fully and properly complied with section 3-204 by timely recommending Beatrice Joan Lester as the Democratic Committee’s first recommendation for the position of Democratic Elections Commissioner; (2) the Allegany County Democratic Committee has fully and properly complied with section 3-204 by timely recommending Diane Martin as “a different person” for the position of the *703 Democratic Elections Commissioner; (3) both Lester and Martin were determined by the Personnel Committee of the Board to be qualified to hold the position; (4) the Board voted upon a resolution to appoint Lester on October 15, 2002, ayes 0, noes 14, absent 1, and upon a resolution to appoint Martin on December 9, 2002, ayes 2, noes 11, absent 1, abstain 1; (5) there are no members of the Democratic Party on the Allegany County Board, all members being Republican; (6) Reuning continues to occupy the position of Democratic Elections Commissioner even though his term expired on December 31, 2002; and (7) Reuning has not been recommended/certified by the Democratic County Committee, having lost both recommendation elections on September 11 and November 12, 2002 to petitioners.
Election Law § 3-204, entitled “Elections Commissioners; appointment,” in pertinent part, reads as follows:
“1. At least thirty days before the first day of January of any year in which a commissioner of elections is to be appointed, the chairman or secretary of the appropriate party county committee shall file a certificate of party recommendation with the clerk of the appropriate local legislative body.
“2. Party recommendations for election commissioner shall be made by the county committee or by such other committee as the rules of the party may provide, by a majority of the votes cast at a meeting of the members of such committee at which a quorum is present. * * *
“3. The certificate filed shall be in such form and contain such information as shall be prescribed by the state board of elections.
“4. Commissioners of election shall be appointed by the county legislative body * * * Provided, however, that if a legislative body shall fail to appoint any person recommended by a party for appointment as a commissioner pursuant to this section, within thirty days after the filing of a certificate of recommendation with such legislative body, then the members of such legislative body who are members of the political party which filed such certificate may appoint such person. If none of the persons named in any of the certificates filed by a party are so appointed within sixty days after the filing of any such certificate, then such party may *704 file another certificate within thirty days after the expiration of any such sixty day period recommending a different person for such appointment. If a party fails to file a certificate within the time prescribed by this section, the members of the legislative body who are members of such party may appoint any eligible person to such office.”
While all parties are in agreement upon these motions that the appointing statute, section 3-204 of the Election Law, is clear and unambiguous, the parties are diametrically opposed and disagree as to what precisely the statute requires under the facts of this case. Respondents/defendants take the position that the Allegany County Democratic Committee must continue to submit recommendations to the Republican County Board until the Board votes to approve a candidate to fill the position of Democratic Commissioner. It is conceded by respondents that such a process could involve an endless stream of recommendations without the end result that a recommended Democrat would be appointed.
On the other hand, petitioners take the position that the statute requires only two recommendations, the initial “person” and “a different person” and that nothing in the statute requires a party committee to continue submitting seriatim recommendations. Having complied with the statute as written, petitioners argue that the only clear reading of the statute compels the conclusion that the process is completed, nothing further is required, and that the Board must then choose between the two persons recommended.
An understanding of the history of the appointing statute, section 3-204, is instructive. It begins with article II, § 8 of the New York State Constitution (1894), which in pertinent part reads: “All laws creating, regulating or affecting [Elections Boards] * * * shall secure equal representation of the two political parties * * * All such boards and officers shall be appointed or elected in such manner, and upon the nomination of the representatives of said parties respectively, as the legislature may direct.” (Emphasis supplied.) Bi-partisan supervision and control over the conduct of the Election Boards with the selection of an independent, responsible, and concerned representative designated by the party itself is a constitutional requirement. (See Matter of Northrup v Kirwan, 88 Misc 2d 255, 261-262, affd 57 AD2d 699.)
Since that constitutional convention, the first significant Election Law legislation occurred in the 1922 enactment of *705 Election Law §§ 30 and 31 (L 1922, eh 588), which were in effect until 1971. Election Law former § 31 provided for the recommendation of commissioners by “the respective chairmen of the county committees.” In Matter of Ahern v Board of Supervisors of Suffolk County (17 Misc 2d 164, 168 [Sup Ct, Nassau County], revd on other grounds 7 AD2d 538, affd 6 NY2d 376 [1959]), Justice Meyer held that under the statute the local legislature cannot be required to appoint a particular person, but cannot make an appointment that is not recommended to it on nomination of the party chairman involved. Justice Meyer went on to state (at 168), “The framers of the Constitution and the Legislature have thus wisely provided for bi-partisan supervision over the election machinery and in order to assure that a Board of Supervisors controlled by one party not be able to appoint a friendly member of the opposing party to do its bidding have given the party chairman alone or together with his executive committee the authority to nominate his party’s representative on the board.”
In 1971 (L 1971, ch 389, § 1), the State Legislature amended the statute to provide in pertinent part, “if such county legislative body shall fail or refuse to appoint any person recommended for appointment * * * then the commissioner shall be appointed by the members of such county legislative body who are of the same political party as is the committee chairman who made and filed such recommendation.” (Election Law former § 30 [1].) The rationale behind this amendment as explained by the Memorandum of Assemblyman Field (1971 NY Legis Ann, at 201) was as follows:
“The law as it stands at the present time has a peculiar quirk in that the members of one party are asked to approve the Commissioners of Election of a second party. This sometimes results in the majority party dominating the entire Board of Elections as is the case in Albany County.
“Our entire Election Law looks to a bi-partisan effort in the conduct of elections and for this purpose, Boardfs] of Elections are made up of representatives of both major parties.
“The theory behind the present law is that each party will select its own personnel and having done so, the normal political competitive climate will assure a fair election. In Albany, however, the majority party has refused to appoint the chosen representatives of the minority party * * *
*706 “To permit this course of conduct to continue is to frustrate the elective process * * *
“To permit the present condition to continue is to permit the majority party to dominate completely the elective process within Albany County.” (Emphasis added.)
In 1976, sections 30 and 31 of the Election Law were combined into section 3-204. This newly created statute continued the requirement for appointment of the commissioner by the members of the legislative body who are members of that person’s party.
It is significant that there was an initial amendment, former section 3-204 (6), which provided a default mechanism. If a party recommendation were not filed or if a recommendation were rejected, and there were no legislative members of the defaulting party, the right to appoint any qualified and enrolled member of the defaulting party was granted to the local legislative body as a whole, i.e., the representatives of the opposing party. Recognizing the potential difficulty with such a grant of power the Legislature almost immediately repealed that default mechanism section (L 1976, ch 234, § 9).
In 1984, Election Law § 3-204 was amended again (L 1984, ch 455, § 1) to provide for the default mechanisms which are presently in place. Specifically, if the local legislative body shall fail to appoint any person recommended for appointment as a commissioner, the members of the legislative body who are members of the political party which filed the certificate may appoint “such person.” This language is clear that the only person who may be appointed is the one recommended by the political party. Next, if none of the persons named in any of the certificates filed by a party are appointed within 60 days, the party may file “another certificate” within 30 days “recommending ‘a different person’ for such appointment.” Again the procedure is clear, if one of the first persons recommended by the party is not appointed either by the full legislative body or by the members of that party who are members of the local legislative body, then the party may submit “another certificate” designating “a different person.” If the party committee does not timely submit any recommendation, the members of the legislative body who are members of such party may appoint any eligible person to the office. Except upon the first submission, the full legislative body is never again given the power to appoint. Thus, the statute removes the majority party from any ultimate control over the appointment of the election commissioner of the opposing party.
*707 Of the four most recent cases of any relevance, Matter of Matthews v Zwirn (170 AJD2d 708), Matter of Banker v Kalil (182 AD2d 895), Matter of Matthews v Gulotta (198 AD2d 280), and Eisberg v Dutchess County Legislature (37 F Supp 2d 283 [SD NY 1999]), all decided since the 1984 amendment resulting in the present day section 3-204 statute, none have any controlling effect inasmuch as none involve the rather unique circumstances presented herein, to wit, where the Democratic County Committee has submitted two recommendations of two different people and there exist no members of the Democratic Party among the members of the Board.
The wording of the default provisions under section 3-204 is in the singular when it references “person” and a “different person” with nothing to indicate a repetitive process. Were the law to be interpreted to allow for repetitive submissions of names under the facts of this case, it would be ignoring the constitutional requirement of article II, § 8 and obviating the clear legislative intent of the statute. While this repetitive submission process continued, elections would be held without the purposes of the statute being fulfilled and therefore undermine the integrity of the elective system.
The rules of statutory interpretation require this court to interpret in a constitutionally permissible manner and to effectuate the purpose, spirit, and object of the statute under scrutiny. As evidenced by the history of Election Law § 3-204, its purpose and object is to ensure fair and competitive elections with a fully bi-partisan Board of Elections. Therefore, this court determines and holds that under the facts of this case section 3-204 of the Election Law requires only the submission of two recommendations as has occurred here, that no further recommendations are required by the statute, and that the process is now complete. Further, in order to accomplish both the constitutional and legislative intent requiring that commissioners be appointed “upon the nomination of such representatives of said parties respectively,” the Board must now choose at its next regular legislative session between petitioners Lester and Martin as Democratic Commissioner of the Board of Elections.