OPINION OF THE COURT
Phillip R. Rumsey, J.
In this proceeding pursuant to CPLR article 78, brought by order to show cause dated December 24, 2008, petitioner Wil *915 liana J. Wood seeks an order declaring, in effect, that he was wrongfully removed as Democratic Election Commissioner from his term of office ending December 31, 2008, and that respondent Thomas Brown was not properly appointed to that office for a term commencing January 1, 2009. All respondents oppose the relief requested by petitioner, and assert that Thomas Brown was validly appointed.
Term Ending December 31, 2008
The County’s Code of Ethics (Local Law No. 2 [2008] of County of Cortland) (hereinafter Code) prohibits an individual from concurrently holding the offices of Election Commissioner and being “Chairman of any Political Party” (Code art III [C] [4], petition exhibit B). The Code further provides that a person who holds both offices “is guilty of misfeasance in office and the office held by such person shall be declared vacant” (Code art III [C] [5]). By memorandum dated December 10, 2008, the Chair of the County Legislature, John Daniels, declared the office of Election Commissioner vacant for the term ending December 31, 2008, pursuant to article III (C) (5) of the Code, because petitioner then admittedly held the offices of Election Commissioner and Chair of the County Democratic Committee. On December 11, 2008, the County Legislature adopted a resolution ratifying Daniels’ declaration of vacancy in the office of Democratic Election Commissioner.
The issue presented is whether the County Legislature may declare a vacancy in the office of Election Commissioner, upon an admission by the incumbent of dual office-holding in violation of a local ethics law — without prosecution or conviction under local or state law — effectively removing him from office. As a general principle, the home rule provisions of the State Constitution grant county governments broad latitude to regulate local officers (NY Const, art IX, § 2 [c] [ii] [1]; see also Municipal Home Rule Law § 10 [1] [ii] [a] [1]). However, home rule is subject to the power of the State Legislature to regulate matters of state concern, even if state legislation also touches upon matters of local concern (Matter of Kelley v McGee, 57 NY2d 522, 538 [1982]).
Initially, it may appear that the office of Election Commissioner is essentially a county office, rather than a state office. However, election commissioners are charged with administration of state laws governing registration of voters and conduct of elections. Uniform statewide application of the Election *916 Law — to protect the fundamental right of suffrage and to ensure the orderly conduct of elections for local, statewide, and federal offices — is a matter of sufficient statewide concern, and the power of the State Legislature in this area extends to regulation of the office of Election Commissioner. State law that is applicable to this office supersedes any conflicting local legislation (see Kelley v McGee, 57 NY2d at 538-539 [compensation of district attorneys]; Carey v Oswego County Legislature, 91 AD2d 62 [1983], affd 59 NY2d 847 [1983] [filling vacancy in the office of district attorney]; Blass v Cuomo, 168 AD2d 54 [1991], appeal dismissed, lv denied 78 NY2d 1121 [1991] [filling vacancy in the office of county clerk]; Cuomo v Chemung County Legislature, 122 Misc 2d 42 [1983] [filling vacancy in the office of county sheriff]; see also Election Law § 3-208 [restricting the power of a county legislature to fix the salaries of election commissioners]).
In Public Officers Law § 30, the State Legislature has specified the grounds by which a vacancy is created in a public office, including the office of Election Commissioner, and the enumerated grounds do not include violations of a local ethics law in respect to dual office-holding.[1] Separately, the State Legislature has provided that an election commissioner may be removed “by the governor for cause in the same manner as a sheriff’ (Election Law § 3-200 [7]) by the process specifically detailed in Public Officers Law § 34. In areas of statewide interest, the State Legislature is free to act without being restricted by the municipal home rule provisions of the State Constitution, such that home rule powers will not be implicated even where the resulting state legislation also affects local concerns (Kelley v McGee, 57 NY2d at 538-539). As applied to the office of Election Commissioner, article III (C) (5) of the Code is inconsistent with, and is superseded by, these state statutes. Therefore, the County Legislature lacked the authority to declare a vacancy — as a result of an apparent violation of the prohibition against dual office-holding under its local ethics law *917 (without prosecution or conviction) — in the office of Election Commissioner for the term of office ending December 31, 2008.[2]
The conclusion that a county legislature, which has the authority to appoint an election commissioner (Election Law § 3-204), lacks the corresponding authority to declare a vacancy in that office (as a result of an apparent violation of local ethics law), or to remove an election commissioner from office, may seem illogical; however, this determination necessarily results from application of state law, which is the sole source of a county legislature’s authority with respect to this public office. The power of a county legislature to appoint an election commissioner is explicitly granted by state law (see NY Const, art II, § 8; Election Law § 3-204). Nevertheless, the State Legislature reserved to itself the right to define the circumstances which result in a vacancy, none of which are present here (see Public Officers Law § 30), and, further, granted the power to remove an election commissioner, not to county government, but to the governor (see Election Law § 3-200 [7]), thereby denying such authority to the counties.
Under the circumstances of this proceeding, the declaration of a vacancy in the office of Election Commissioner for the term ending December 31, 2008, pursuant to article III (C) (5) of the Code, is null and void. Petitioner cannot be restored to that term of office, which has now expired; however, he is entitled to compensation for the remainder of his term ending December 31, 2008. Such damages may be awarded in this article 78 proceeding, because such compensation is incidental to the primary relief sought by petitioner, i.e., a declaration that he “continuéis] to be the Democratic Elections [sic] Commissioner for Cortland County for the term ending December 31, 2008” (petition If A), and because such compensation was sought in this proceeding (id.; CPL3R 7806; Pauk v Board of Trustees of *918 City Univ. of N.Y., 68 NY2d 702 [1986]). Further proceedings shall be held, if necessary, to fix the amount of petitioner’s damages.
Term Commencing January 1, 2009
Pursuant to Election Law § 3-204 (4), the Cortland County Democratic Committee, on June 5, 2008, filed a certificate recommending William Wood for appointment to the office of Election Commissioner for the term commencing January 1, 2009. The respondent Cortland County Legislature rejected that recommendation, and the members of the County Legislature who are Democrats (hereinafter caucus) also declined to appoint him (see Wood v County of Cortland, Cortland County, Dec. 17, 2008, index No. 08-667). On August 29, 2008, the County Committee filed a certificate recommending Mary Leonard for appointment, and the relevant statutory time periods elapsed without action on this recommendation by either the County Legislature or the caucus. On December 8, 2008, the Democratic Committee filed a third certificate, again recommending William Wood for appointment as Election Commissioner. There is no showing that any other certificate was filed by the County Committee. On December 11, 2008, Thomas Brown was appointed to the office of Election Commissioner for a two-year term commencing January 1, 2009 by resolutions separately adopted by the County Legislature and the caucus.
The State Constitution imposes upon the legislative body of a county the duty to appoint an election commissioner (see Ryan v Albany County Democratic Comm., 68 AD2d 1014 [1979], mod 47 NY2d 963 [1979]). Article IX (§ 1 [b]) of the State Constitution provides: “All officers of every local government whose election or appointment is not provided for by this constitution shall be elected by the people of the local government, or of some division thereof, or appointed by such officers of the local government as may be provided by law.” Article II (§ 8) of the State Constitution, which governs the conduct of local boards of election, vests in the State Legislature the authority to legislate the manner in which such boards, and their officers, are to be selected (Ryan, 68 AD2d at 1014).
The State Legislature explicitly recognizes the primacy of a local government’s constitutional duty and power to appoint an election commissioner, by affirming in Election Law § 3-204 (4) that ‘ ‘ [c] ommissioners of election shall be appointed by the county legislative body.” The statute then provides a procedural mechanism by which the county legislative body, or its members *919 who are members of the relevant party, are to make such appointments. The process may be commenced by the relevant county political committee filing with the county legislative body a certificate of recommendation nominating one or more qualified individuals for appointment. The legislative body may appoint a nominated person, or choose not to do so, within 30 days after a certificate is filed. If the legislative body declines to appoint, the caucus also may, but is not required to, appoint a person nominated in the certificate within the subsequent 30-day period. Should the caucus also decline to appoint a recommended person, the county political committee may submit a second certificate of recommendation for consideration by the legislative body and, once again, if necessary, by the caucus.
Neither the county legislative body nor the caucus may be compelled to appoint one of the individuals nominated by a county political committee.[3] The legislative body and the caucus have the power and discretion to appoint, or not to appoint, a nominee; the county committee has only the power to recommend individuals for appointment (Matter of Thomas v Wells, 288 NY 155 [1942]; Matter of Frangella v Albany County Legislature, 59 Misc 2d 1057 [1969]; Eisberg v Dutchess County Legislature, 37 F Supp 2d 283 [SD NY 1999], affd 181 F3d 82 [2d Cir 1999]), and such recommendations may be rejected for any reason (Matter of Matthews v Gulotta, 198 AD2d 280 [1993], appeal dismissed 83 NY2d 847 [1994]). Restricting the power of appointment held by the county legislative body, by limiting it to appointing individuals recommended by a county committee, would impermissibly — albeit indirectly — empower that committee to appoint a public officer, in clear violation of the State Constitution and the Election Law. Any conflict between the rights of a legislative body — a body of local government — and a county committee must necessarily be resolved in favor of the legislative body.[4]
*920 In the instant proceeding, the procedural mechanism for appointment established by Election Law § 3-204 — involving the filing of two successive certificates — was followed to completion, but did not result in the appointment of a commissioner. Under such circumstances, the County Legislature is required to exercise its constitutionally based duty to appoint an election commissioner, and may appoint a qualified person of its own choosing (see generally Ryan, 68 AD2d at 1014). In Ryan, the County Democratic Committee failed to file a valid certificate of recommendation within the time specified by Election Law § 3-204 (4). At that time, the statute allowed only one recommendation, and did not specify the procedure to be followed if the county committee failed to make a timely recommendation. The Court of Appeals affirmed the decision which held that, because the statute did not explicitly provide the procedure to be followed under such circumstances, the county legislative body was required to exercise its duty to appoint an election commissioner.
Here, the County Committee submitted the two successive certificates of recommendation expressly contemplated by the statute, and neither of the persons recommended was appointed. When the County Legislature failed to act on the second recommendation filed on August 29, the right to appoint was abandoned to the members of the County Legislature who are Democrats, the caucus, and when they also failed to exercise the right to appoint within a 30-day period, the procedure specified by the statute was exhausted. Because the statute fails to provide any additional procedure for appointment under such circumstances, the County Legislature was required to fulfill its constitutionally based duty to appoint an election commissioner, which it did on December 11, 2008. Consequently, Thomas Brown was validly appointed to the office of Democratic Election Commissioner for a two-year term beginning January 1, 2009, pursuant to Election Law § 3-204 (4), by the resolution of the County Legislature, duly adopted on December 11, 2008.
It must also be determined whether the third certificate of recommendation filed by the County Committee in December had any legal effect on the appointment process. Election Law *921 § 3-204 (4) explicitly authorizes the filing of only two certificates of recommendation. As enacted in 1976, the statute continued the procedure first established by a 1971 amendment to a predecessor statute (Election Law former § 30), and authorized a county committee to make a single recommendation (see Martin v Reuning, 194 Misc 2d 701, 704 [2003]). The statute was amended in 1984 to authorize a second recommendation. Had the State Legislature intended to permit additional filings, beyond a second certificate, it would have provided for them in the 1984 amendment. Additionally, in view of the fact that an amendment of the statute was necessary to authorize submission of a second recommendation, further amendment of the statute, which has not occurred, would be necessary to authorize filing a third certificate. Thus, there is no statutory authority for filing a third certificate of recommendation, and the certificate filed in December 2008 is of no effect.
Even if the statute permitted filing a third recommendation, the certificate filed in December 2008 was untimely. The second certificate, nominating Mary Leonard, was filed on August 29, 2008. No action was taken to appoint her within 60 days thereof, or by October 28, 2008; if the statute were to be construed as permitting further filings, the County Committee would have had to file a third certificate of recommendation within the subsequent 30 days, on or before November 27, 2008.® Furthermore, contrary to petitioner’s claim, the temporary restraint that was contained in the order to show cause signed on November 20, 2008 in the prior proceeding (Wood v County of Cortland) — which restraint was lifted on December 5, 2008— did not act to extend the time for filing any additional certificates of recommendation.[5]
[6] If the statute were found to permit a third certificate, the failure of the County Committee to timely *922 file it would have authorized the caucus to act, pursuant to Election Law § 3-204 (4), as it did in appointing Thomas Brown by resolution dated December 11, 2008.
The court makes no finding with regard to whether the Code serves to render Brown ineligible to be appointed Election Commissioner. Petitioner asserts that Brown’s appointment would place him in violation of the Code’s prohibition against any person holding the office of Election Commissioner concurrently with that of “Chairman of any Political Party” (Code art III [C] [4], petition exhibit B) — a term not defined by the Code— because Brown serves as cochair of the City of Cortland Democratic Committee. Whether the term “Chairman of any Political Party,” an imprecise phrase, includes chairpersons of a national, state, or other municipal committee of a political party, in addition to a chairperson of a county committee, is a question that the court should not, and need not, answer, given the facts of this proceeding. Ambiguities in the recently enacted Code should first be addressed by the County Legislature, or by the County Board of Ethics, created by the Code, and neither have done so.
Petitioner’s requests for temporary and preliminary injunctive relief are denied, as is his request for an order directing the County Legislature to accept the certificate of recommendation filed on December 8, 2008 as timely.

. In County of Broome v Conte (120 Misc 2d 1050 [1983], affd 101 AD2d 905 [1984]), the court found that a vacancy in office was created, by operation of Public Officers Law § 30 (1) (e), upon an election commissioner’s misdemeanor conviction, under state law, of offering a false instrument — a ballot petition — for filing. The Penal Law conviction was found to be a “crime involving a violation of his oath of office” (id. at 1052).

. Having ruled that the County Legislature did not act properly in declaring the office of Election Commissioner vacant on December 11, 2008, the court need not determine whether the Code may prohibit an election commissioner from concurrently holding office in a political party, which is an issue of first impression. Golden v Clark (76 NY2d 618 [1990]) and Belle v Town Bd. of Town of Onondaga (61 AD2d 352 [1978]) upheld prohibitions adopted by local governments against dual office-holding by officers of local governments, who were subject to regulation by local government; neither case involved a situation where the local ethics law was inconsistent with a state statute that provided for removal of the local official. In fact, Belle addressed a town code of ethics, a violation of which formed the basis of removal pursuant to a consistent state statute, Town Law § 267 (9), which authorizes a town to remove local officials (but see 2007 Ops Atty Gen No. 2007-7).

. In Martin v Reuning (194 Misc 2d 701 [2003]), the court ordered the local legislature to appoint one of the two persons recommended by the county committee in the two certificates of recommendation it had filed. That case is distinguishable from the instant proceeding, given the absence of any legislators who were members of the political party making the recommendation, and, for the reasons stated herein, this court declines to impose such a remedy.

. The statutory scheme of section 3-204 aims to provide checks and balances among the interests of a county political committee, a county legislative body, and a caucus. The county committee makes its recommendations knowing that neither the legislative body nor the caucus is ultimately required to *920 appoint any of the individuals who are recommended. In considering any valid recommendation, the legislative body or the caucus may initially choose only to appoint, or not to appoint, an individual recommended by the county committee, and each acts with the knowledge that a refusal to appoint a recommended person may deprive it of any further voice in the process.

. In the event that this last certificate could be viewed as a new recommendation, rather than a third recommendation, the certificate filed on December 8, 2008 was not timely, because it was not filed at least 30 days prior to year-end, as required by Election Law § 3-204 (1).

. The temporary restraint simply enjoined the respondent County Legislature from appointing anyone to serve as Democratic Election Commissioner for the term commencing January 1, 2009; it did not bar the County Committee from taking any action, such as filing additional recommendations. It bears noting that the provisions in the order to show cause were those proposed by petitioner (in this and the prior proceeding), who expressly requested a preliminary determination that the County Committee was not required to continue to file certificates of recommendation during the pendency of the proceeding, yet proposed no language imposing any temporary restraint on the County Committee.
*922 The third certificate was also invalid, because it named William Wood, who had previously been nominated. The statute requires that a “different person” be recommended in the second certificate, and there is no reason that such a restriction would not apply to subsequent recommendations, were they to be found permissible.